Argued October 3, affirmed October 29, 1973

STATE OF OREGON, *Respondent, v.* JAMES
RUE DUNCAN (No. 38030), *Appellant.*

515 P2d 191

*Francis E. Harrington,* Portland, argued the cause
and filed the brief for appellant.

*Brian R. Barnes,* Deputy District Attorney, Rose-
burg, argued the cause for respondent. With him on
the brief was Doyle L. Schiffman, District Attorney,
Roseburg.

Before SCHWAB, Chief Judge, and LANGTRY and
FORT, Judges.

LANGTRY, J.

Defendant appeals from a court conviction on a
charge of perjury (ORS 162.065). The sole question

presented is whether there was sufficient evidence presented to support the guilty verdict.

The perjury charge arose from testimony given by the defendant at the rape-kidnapping trial of Lynn Van Hooser. *Cf. State v. Van Hooser,* 11 Or App 146, 501 P2d 78 (1972), *affirmed* — Or —, 511 P2d 359 (1973).

ORS 162.065 (1) provides:

"A person commits the crime of perjury if he makes a false sworn statement in regard to a material issue, knowing it to be false."

On trial of the perjury charge, the state offered into evidence the entire transcript of the Van Hooser trial. This was admitted upon stipulation of counsel that the court could consider the testimony therein as if it had been given in the perjury trial.

Defendant's testimony in the Van Hooser trial amounted to 20 pages of transcript. In general he testified that he had seen Lynn Van Hooser at the home of Garland and Myrna Stone on the evening of December 13, 1971. In the Van Hooser trial this testimony was introduced along with testimony of Van Hooser, Garland Stone and Myrna Stone as well as Van Hooser's mother to establish an alibi defense. The evidence produced by the state at the Van Hooser trial had established that the crimes of rape and kidnapping had occurred sometime between 7 p.m. and 8:45 p.m. on the evening of December 13.

The most incriminating portions of defendant's testimony in the Van Hooser trial are:

"Q   At what time did you arrive at the Stone home?

"A   I don't know; it was between 4:00 and 5:00 o'clock.

"Q And when you arrived there, who was there?

"A Merna was there. Garland and I, her mother and father were there also. That's the extent of it.

"Q Did anybody arrive after you arrived or at the time that you arrived?

"A Shortly after we arrived, this gentlemen right here [Van Hooser] arrived.

"* * * * *

"Q Now, when he — you say shortly after you got there he arrived. How did he arrive? Was he walking or driving or what?

"A He was in a white pickup of some kind.

"Q And what did he do after he got there?

"A I really don't know; he was in and out.

"Q You say he was in and out. What do you mean?

"A Well, he was — he would come inside and he would go outside and back inside again.

"* * * * *

"Q From the time — after this time that you have told us that you were there and all these people were there, how long was, to your knowledge, was Lynn Van Hooser there?

"A Lynn Van Hooser — we arrived between 4:00 and 5:00 o'clock. Lynn Van Hooser arrived shortly afterward, and he left, I can only give you an estimate. It was between 8:30 and 9:00 o'clock.

"* * * * *

"Q At any time while you were there during the period you described, did he leave?

"A Do you mean the premises or —

"Q Yes.

"A — or the town or — he didn't leave the premises, I am sure; he couldn't because he was always back in too soon.

"Q You mean he may have left the house?

"A Yes, he did leave the house. I can't tell you when or exactly how but I have this impression because there were kids in and out and I am sure that he was too. I assume — well, here I go assuming again. I can't remember him going through a door at a certain time but I am of the impression that he was in and out of the house.

"Q For what period of time would he have been gone for any time that he was out of the house?

"A Five or ten minutes. Likewise, the children.

"* * * * * *

"Q All right. Now, have there been occasions when you and Garland Stone and Merna Stone have discussed what you have told the jury?

"A You bet. It was a point of interest to me, and I assumed to them. We were concerned as to how an individual could be somewhere else when he was there, and it has been a topic of conversation, not necessarily with Merna so much, but Garland and I talked about it."

Evidence in the rape trial amply supported that conviction. *State v. Van Hooser,* supra. It established that at the time of the rape (necessarily between 7 p.m. and 8:30 p.m. on December 13) Van Hooser was in a vehicle near Oakland, Oregon, which was some 20 to 24 miles by road from the Stone home. Obviously, it would have been impossible for Van Hooser to have traveled at least 40 miles and to have committed all of the acts ascribed to him in the "Five or ten minutes" so positively sworn to in the above quotations from defendant Duncan's testimony. Further, in his testimony in the Van Hooser trial he sought to impress the fact finder with his opinion when he testified, "* * * We were concerned as to how an individual could be somewhere else when he was there * * *."

ORS 162.055 (3), defining "statement" as the word is used in ORS 162.065 (1), provides:

> " 'Statement' means any representation of fact and includes a representation of opinion, belief or other state of mind where the representation clearly relates to state of mind apart from or in addition to any facts which are the subject of the representation."

Thus, there was proof that defendant made a false sworn "statement" on a material issue. From all of the evidence, the fact finder could infer this was knowingly done.[①]

Affirmed.

---

[①] At the Van Hooser trial, Myrna Stone testified that Van Hooser had arrived at her place around 3:30 p.m., helped her for a while and then left for a short time, returning after Garland Stone and Jim Duncan had arrived.

At the Duncan perjury trial, Garland and Myrna Stone reiterated their testimony from the Van Hooser trial. Myrna Stone's grandparents, who did not testify at the Van Hooser trial but who were identified at that trial as being present at the Stone home December 13, 1971, testified on behalf of Duncan at his trial. They both testified that Van Hooser was present at the Stone home on December 13, 1971.

At the time of sentencing, which was over a month after the finding of guilty, Myrna Stone was produced by the prosecutor for further testimony on a hearing on mitigation or aggravation of punishment (ORS 137.080 through 137.110). From her testimony it was learned that her husband had died in the interval, and she had volunteered to tell the truth about the alibi. She testified that Van Hooser had been at her house on December 13 from about 4 p.m. to 6 p.m., and that he had left then and had come back just before 9 p.m. He knocked on the door, her husband answered, and Van Hooser said, " 'The cops will be here. You tell them I was here.' " He then left. She testified that when Van Hooser knocked at the door defendant Duncan stood beside the door while her husband opened it and as Van Hooser made the above-quoted statement.

Defendant contended on oral argument that, inasmuch as the state's theory on trial of the case was that Van Hooser never was

at the Stone house on December 13, this testimony it produced before sentencing disproved the state's case and we should reverse.

We do not so view the evidence. The guilty finding had already been made by the fact finder upon ample evidence. The mitigation or aggravation hearing was only for the purpose of aiding the judge in his sentencing duties. The testimony from Myrna Stone was, in this context, simply of value to demonstrate how aggravated an offense it was.