Argued and submitted September 5, reversed and
remanded for resentencing November 5, 1979

## STATE OF OREGON,
### *Respondent,*
#### *v.*
## VIRGINIA KINCAIDE,
### *Appellant.*

(Nos. 77 3049, 77 3050, 77 3051, CA 12703)

602 P2d 307

J. Marvin Kuhn, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

F. Douglass Harcleroad, Assistant District Attorney, Eugene, argued the cause for respondent. With him on the brief was J. Pat Horton, District Attorney, Eugene.

Before Joseph, Presiding Judge, and Lee and Richardson, Judges.

JOSEPH, P.J.

**JOSEPH, P.J.**

Defendant was convicted in a trial by jury of three counts of theft in the first degree and three counts of forgery in the first degree. The theft convictions were merged into the forgery convictions for sentencing.

On appeal defendant assigns as errors: (1) the admission of hearsay evidence; (2) denial of a motion for judgment of acquittal on the ground of insufficient evidence; (3) admission of a document containing information not voluntarily given by defendant; (4) admission of deeds not relevant to any material issue; and (5) failure to impose only a single sentence for two of the theft and two of the forgery convictions.

Defendant took into her Michigan home and cared for an elderly woman, Ida Ratzel, from the fall of 1972 to August 4, 1974. There was evidence that "Aunt Ida," as she was called, was losing her mental faculties and was unable to care for herself. Defendant moved to Eugene in August, 1974, and placed Aunt Ida in a Michigan home for elderly women until March 29, 1976, when defendant transferred her to a retirement center in Eugene. On October 14, 1974, defendant, posing in Eugene as Ida Ratzel, cashed a check for $9,000 from the sale of securities owned by Ida which defendant had requested to be sold by a broker. $8,600 of that amount was deposited in a checking account opened by defendant as Ida Ratzel on the same date. On October 31, 1974, defendant deposited by check $7,800 from that account into her own checking account. There was evidence that defendant used those funds to purchase real property in her own name. Over two years later, in January, 1977, a check for $2,002.30 and payable to Ida Ratzel was deposited into a joint account opened by defendant in her and Ida's names. That check represented the surrender proceeds from a 20-year endowment life insurance policy issued to Ida. Defendant admitted at trial that she used that money for her family's living expenses.

The three indictments, each containing counts of forgery and theft, arose respectively out of the insurance proceeds transaction, the securities sale and the $7,800 transfer to defendant's account. The evidence showed that the signatures on all three checks in Ida's name were made by defendant. At trial defendant claimed that she had been authorized by Ida to use her name and manage her financial affairs and that Ida had given her the funds that she had appropriated for her own use. At the time of trial Ida Ratzel was determined to be incompetent and was not allowed to testify.

During the state's case-in-chief, defendant objected to testimony of Ida's brother-in-law that in late July or August, 1974, Ida had said, as she clutched a black box containing some of her assets, "Virginia [*i.e.,* defendant] is trying to take my money." The court struck the testimony at that time, gave a cautionary instruction to the jury and denied a motion for mistrial.[1] The court later admitted the same testimony for the purpose of rebutting the defense of authorization, after defendant had testified that she had acted with Ida's knowledge and consent. Also admitted then was similar testimony by the same witness that during the same week Ida said, "They're trying to take my money."

In an *in camera* hearing the court commented on its ruling:

"I'm not going to tell the jury that the Court is reversing a prior ruling because the Court isn't reversing a prior ruling. At the time of the first ruling the State was in its case in chief, and had the testimony come in it would have come in as substantive evidence of a lack of authority or consent, and the witness can testify on rebuttal for what value, if any, it may have for impeachment of the defendant's testimony which, generally, is that during these periods of time Ida Ratzel was talking to her about the management of her money and expressing a desire that the

---

[1] No error is assigned to the denial of the motion for mistrial.

defendant manage that money. It would come in not as substantive evidence but as possible impeachment. So, the evidentiary context is quite different. I wouldn't want to tell the jury that I've reversed myself or that they can now consider this evidence in the case, nor do I see any necessity for a cautionary instruction, any more than for any other rebuttal testimony when it's offered."

The challenged statements were out-of-court declarations offered to show that Ida was unlikely to have authorized defendant to handle her money. Whether or not the statements were true, their utterance by Aunt Ida was independently relevant as evidence of her distrustful state of mind concerning her money. They were not offered to prove the truth of any fact asserted, so they were not hearsay in that context. *Sheedy v. Stall,* 255 Or 594, 597, 468 P2d 529 (1970); *Marr v. Putnam,* 213 Or 17, 25, 321 P2d 1061 (1958).

In this case the statements were admissible to show that Ida was of a disposition not to have allowed others, including defendant, to manage her money. The statements and their corroboration demonstrated a distrustful state of mind that had probative value in rebutting the defense of authorization. There is no doubt, however, that a jury instruction should have been given to limit the utilization of the testimony to establishing the state of mind of Aunt Ida at that time. Although in some cases such an instruction may be unhelpful,[2] "[g]ood limiting instructions are vital where the possibility exists that the jury will consider the testimony for an improper purpose." *United States v. Brown,* 490 F2d 758, 777 (DC Cir 1973). In this case, it is likely that the jury would have considered the declarations for their broader meaning because neither in the instructions nor in final argument was a limited purpose discussed before the jury. Despite defense counsel's indication, and agreement by the prosecutor, that a cautionary instruction was appropriate,

_____

[2] *E.g., Shepard v. United States,* 290 US 96, 104, 54 S Ct 22, 78 L Ed 196 (1933).

the court made clear in its remarks, *supra,* that it would not grant such a request. It was error not to have given a limiting instruction once the evidence was admitted in rebuttal. *See State v. Farnam,* 82 Or 211, 252-53, 161 P 417 (1916).

The error was unlikely to have changed the result of the trial. There was substantial and convincing evidence of defendant's guilt. Or Const, Amended Art VII, § 3; *State v. VanHooser,* 266 Or 19, 25-26, 511 P2d 359 (1973). Defendant's sole defense was that her transactions were authorized by Ida. Her only corroboration was the testimony of her children. She had posed as Ida in several face-to-face financial transactions. At a conference concerning Ida's will, neither defendant nor Ida told the attorney preparing it anything about defendant taking over Ida's financial affairs, although it was on the very date when the first specific authorization allegedly occurred. Defendant was unable to corroborate any of the subsequent long distance phone calls with Ida in which she claimed Ida had authorized transactions. Moreover, the prosecution did not rely heavily on the statements in final argument. *See State v. VanHooser, supra* at 26. An inference of guilt from the hearsay aspect of the testimony was overshadowed by an array of more compelling and specific evidence that defendant had forged checks and appropriated the funds to her own use.

Our determination that there was substantial and convincing evidence of defendant's guilt disposes of the contention that there was insufficient evidence to support the verdict.

On the third assignment of error, the defendant contends that the court erred in admitting into evidence a security release form containing information furnished by defendant to secure her release from custody after arrest on the ground that the statement was involuntarily compelled. The document was offered by the state to show a discrepancy between defendant's admission at trial that she had used Ida's

[78]

name and her failure when the form was being completed by a security officer to give that name as one other than her own that she had used in the past. The evidence showed that defendant did not remember the interview with the security release officer, that defendant may have been upset at the time but that the person assisting with the form would have attempted to calm her down, that she was told that completing the form was a prerequisite to release and that defendant was not threatened. Nor did she refuse or hesitate to complete the form. The judge ruled the document admissible.

The standard for review of the factual determination of the circumstances of voluntariness is that "if the evidence sustains such historical factual findings they will not be disturbed by the court." *Ball v. Gladden*, 250 Or 485, 487-88, 443 P2d 621 (1968). Under that rule, if explicit findings are not made, the presumption is that facts were decided in a manner consistent with the ruling. Insofar as it is a matter of factual determination, the evidence in this case supports a finding of voluntariness.

This issue poses the further question whether *Miranda* warnings were required in this setting. *Miranda v. Arizona*, 384 US 436, 444, 81 S Ct 1601, 16 L Ed 2d 694 (1966). In *State v. Whitlow*, 13 Or App 607, 613, 510 P2d 1354, *rev den* (1973), we held that a request for defendant's name after his arrest was a question asked for a "standard administrative purpose" as the first step in booking, and hence was not interrogation within the ambit of the *Miranda* rule. In *State v. Gill*, 24 Or App 541, 544, 546 P2d 786 (1976), we relied upon the following language in McCormick, Evidence 329, § 152 (3d Ed 1972):

"Where the police action is merely routine gathering of information to be used for standard administrative purposes, the warnings have not been required because the police action was neither intended nor reasonably likely to elicit incriminating information."

[79]

Under the circumstances here the questions required to be answered were neither intended nor reasonably likely to elicit incriminating information. Hence, no warnings were required to be given, and the security release form was properly admitted.

Defendant took exception to the admission into evidence of deeds conveying real property of defendant to her defense attorney. They were adduced by the state to show conversion of Ida Ratzel's funds to defendant's own use. The documents were relevant to the theft charges and were properly admitted.[3]

Finally, defendant asserts that two of the forgery convictions should have been merged because they involved the same money.[4] Actually, defendant argued for an even greater merger in the trial court:

"[Defense counsel]: The defendant takes the position that only one sentence is appropriate; that the thefts merge with the forgeries and that there is only one total offense, and that only one sentence is applicable. Therefore, for the record, the defendant objects to any sentence other than one sentence, Your Honor."

Although defendant's position on appeal is more limited, we regard the objection made in the trial court sufficient to preserve the issue. *See State v. Applegate*, 39 Or App 17, 591 P2d 371, *rev den* (1979). The two forgery counts that defendant now focuses on arose from these facts:

1. On October 14, defendant opened a checking account in the name of Ida Ratzel, endorsed Ida Ratzel's name on a $9,000 check payable to Ida Ratzel, and

---

[3] The additional argument in defendant's brief that defense counsel was somehow prejudiced by introduction of this evidence was not properly raised at trial, and we do not consider it.

[4] The Supreme Court has pointed out that "merger" is a term "best reserved for the narrow situation when the completion of one offense necessarily includes commission of acts sufficient to constitute violations of another statute." *State v. Cloutier*, 286 Or 579, 586, 596 P2d 1278 (1979). The usage here then is not strictly correct, but it avoids a wordy circumlocution.

deposited $8,600 of that check into the fictitious account.

2. On October 31, defendant signed Ida Ratzel's name to a $7,800 check drawn on that fictitious account and payable to herself. Defendant deposited this check in her own account.

On these facts it is not even clear that the October 31 transaction involved a separate forgery. An element of forgery is an "intent to injure or defraud." ORS 165.007(1). There is no apparent separate or independent intent to defraud on October 31—as distinguished from a continuation of the same intent to defraud that existed on October 14. *Cf. State v. Welch*, 264 Or 388, 505 P2d 910 (1973).

In any event, we conclude that the October 14 and 31 forgeries should be merged into a single conviction and sentence. While it is unlikely that any single rule is ever going to govern all possible merger situations, there is a general principle that emerges from *State v. Cloutier*, 286 Or 579, 596 P2d 1278 (1979), and *State v. Gilbert*, 281 Or 101, 574 P2d 313 (1978): A defendant is subject to only a single conviction and sentence for conduct directed to the accomplishment of a single criminal objective that causes a single injury to a single victim. That principle is sufficient to dispose of this case. The October 14 and October 31 transactions involve the same victim, Ida Ratzel. Defendant had the single criminal objective of appropriating and withholding Ida Ratzel's money. Most importantly here, defendant's conduct caused a single injury—Ida Ratzel's loss of $9,000 on October 14; defendant's subsequent transfer of some of that money to another account perpetuated the injury done on October 14, but it did not in any way cause a new or different injury.

By contrast, defendant's additional forged endorsement over two years later, in January, 1977, of a $2,002.30 check payable to Ida Ratzel constituted a

separate offense. The temporal distance between the October, 1974, and January, 1977, transactions is too attenuated to support the inference that both involved a single criminal objective. *State v. Cloutier, supra,* 286 Or at 595. Moreover, although there was a single victim, the later transaction inflicted a new and different injury on Ida Ratzel—the appropriation of an additional sum of her money.

Defendant is liable for entry of convictions and imposition of sentences for two counts of forgery.

Reversed and remanded for resentencing.