Submitted on record and briefs January 30, reversed September 14, 1981

## STATE OF OREGON,
*Respondent,*

*v.*

## BENNETT FLAMER, aka
Roland Alexander,
*Appellant.*

## (No. 10-79-04423, CA 18418)

633 P2d 860

Gary D. Babcock, Public Defender, and John Daugirda, Deputy Public Defender, Salem, filed the brief for appellant.

James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, William F. Gary, Deputy Solicitor General, and Virginia L. Linder, Assistant Attorney General, Salem, filed the brief for respondent.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

## WARREN, J.

In a trial to the court, defendant was convicted of perjury. ORS 162.065.[1] He appeals the judgment of conviction, asserting that the pretrial release officer who administered the oath under which he allegedly made false statements did not have express authority to administer oaths. The state concedes that a conviction for perjury cannot be predicated upon an oath taken before a person lacking express statutory authority to administer oaths. *State v. Craig,* 94 Or 302, 185 P 764 (1919); *accord* Proposed Oregon Criminal Code 188-189, Commentary, § 186 (1970).

Defendant was stopped for careless driving in the early hours of April 26, 1979. In the course of the interview with the officer, defendant identified himself by four different names which appeared on credit cards and an altered driver's license found in his possession. He was arrested for careless driving and furnishing false information to a police officer, advised of his *Miranda* rights[2] and transported to the Lane County Jail.

In the office of the custody referee, later in the morning, defendant was interviewed by Victor Witcher, the assistant custody referee (also referred to as a deputy pretrial release officer), for the purpose of obtaining pretrial release information. Witcher administered an oath to defendant at the outset of the interview; defendant stated under oath to Witcher that his name was "Roland Alexander," that his only alias was "Vance Carter" and that he had no prior convictions. He also signed a security release questionnaire and financial statement to this effect. Witcher verified the oath on the security release questionnaire over the title of "Deputy Court Clerk."

A second sworn statement was taken by Release Assistance Officer John Phillips on June 6, 1979, for the

---

[1] ORS 162.065(1) provides:

"A person commits the crime of perjury if he makes a false sworn statement in regard to a material issue, knowing it to be false."

ORS 162.055(4) provides:

" 'Sworn statement' means any statement knowingly given under oath or affirmation attesting to the truth of what is stated."

[2] *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966).

purpose of appointment of defense counsel. At that time defendant told Mr. Phillips, under oath, that his true name was Bennett Flamer. Defendant was subsequently indicted for perjury on the basis of his previous sworn statements to Witcher concerning his aliases and his prior convictions. The parties stipulated to the admission of the two sworn statements, to testimony concerning a handwriting exemplar and to other exhibits which tended to show that defendant had prior convictions.

At a pretrial hearing on the perjury charge, the state introduced, over defendant's objection, the official Oath and Order of Appointment of Witcher as a "Deputy County Clerk" by the Court Administrator, Michael Terry. The oath of office was administered to Witcher by John Phillips, over the title of Deputy Court Administrator, on behalf of Michael Terry.

The state also introduced the Oath and Order of Appointment of John Phillips as "Deputy County Clerk" by the Court Administrator. These appointments, like those of all other Deputy Clerks then in the employ of Lane County, Department of Judicial Administration, were ratified and confirmed by Phyllis Taylor, after the fact, over the title of the Acting Director of the Department of Judicial Administration and County Clerk.[3] The document ratifying these appointments was also admitted into evidence. During direct examination at the pretrial hearing, Witcher testified that he was employed as a pretrial release officer; on cross-examination he stated that he was employed as a deputy court clerk in the office of the custody referee. Witcher's testimony and the three documents previously described are the only evidence in the record of the administrative structure of Lane County or the prescribed authority and functions of county officers, despite extensive colloquy on the issue.

■ Defendant assigns as error the trial court's denial of his motion for acquittal on the ground that he was not guilty of perjury because Witcher did not have authority to administer the oath.[4]

---

[3] Phyllis Taylor was apparently Michael Terry's successor in office.

[4] Defendant also assigns as error the trial court's denial of his motion for acquittal on the grounds that he was not given *Miranda* warnings immediately prior to his questioning by the assistant custody referee. We have previously held

The state concedes that there is no specific statutory authority for the administration of an oath by a Release Assistance Officer.[5] The state contends, however, that Witcher had the express statutory authority to administer the oath because he was appointed a deputy by the Lane County Court Administrator, Michael Terry, who purportedly had the power to administer oaths and who delegated that power to Witcher. Defendant argues that the court administrator had no statutory authority to appoint deputies of any sort, and that even if such authority existed, there is no statute specifically authorizing court administrators, or their deputies, to administer oaths. The Oath and Order of Appointment indicates that Witcher was appointed as a deputy county clerk by the Court Administrator. The state argues that the functions of the "trial court administrator" are now synonymous with those of the "clerk" and "clerk of the court" under the provisions of ORS 8.070(5) and ORS 8.075. ORS 8.070(5) provides:

---

that a security release statement is properly admitted into evidence despite the failure to give prior *Miranda* warnings because the questions asked in such a situation are neither intended nor reasonably likely to elicit incriminating information. *State v. Kincaide,* 43 Or App 73, 80, 602 P2d 307 (1979). Defendant contends that since a subsequent indictment for perjury ensued from defendant's untruthful responses on the questionnaire, the questions were likely to elicit incriminating information. We find this assertion without merit and reverse on other grounds.

[5] ORS 135.235 provides:

"(1) The presiding circuit court judge of the judicial district may designate a Release Assistance Officer who shall, except when impracticable, interview every person detained pursuant to law and charged with an offense.

"(2) The Release Assistance Officer shall verify release criteria information and may either:

"(a) Timely submit a written report to the magistrate containing, but not limited to, an evaluation of the release criteria and a recommendation for the form of release; or

"(b) If delegated release authority by the presiding circuit court judge of the judicial district, make the release decision.

"(3) The presiding circuit court judge of the judicial district may appoint release assistance deputies who shall be responsible to the Release Assistance Officer."

Defendant points out that the Release Assistance Officer and assistance deputies must be appointed by the Presiding Circuit Court Judge. Both Mr. Witcher and the release assistance officer, John Phillips, were appointed by Michael Terry, the court administrator. However, because it is conceded that the release assistance officer is not specifically authorized to administer an oath, we do not rule upon the validity of Witcher's appointment as a deputy release assistance officer.

"All references in the Oregon Revised Statutes to clerk or clerk of the court shall be applicable to the court administrator described in subsection (4) of this section."

ORS 8.075 provides:

"All references delineated within the Oregon Revised Statutes referring to clerk or clerk of the court shall be applicable to court administrators as described in subsection (4) of ORS 8.070 and ORS 205.110."

The state reasons that since a court administrator, acting as a "Clerk" or "Clerk of the court," has the authority to administer oaths under the provisions of ORS 44.320 and ORS 205.110,[6] and the power to appoint deputies to perform his duties under ORS 204.601 and ORS 204.630,[7]

---

[6] ORS 44.320 provides:

"Every court, judge, clerk of a court, justice of the peace or notary public is authorized to take testimony in any actionor [sic] proceeding, as are other persons in particular cases authorized by statute or the Oregon Rules of Civil Procedure. Every such court or officer is authorized to administer oaths and affirmations generally, and every such other person in the particular case authorized."

ORS 205.110 provides, in relevant part:

"(1) Each county clerk or trial court administrator as described in subsection (4) of ORS 8.070 has power to take and certify the proof and acknowledgment of a conveyance of real property or any other written instrument, authorized or required to be proved or acknowledged.

"(2) It is the duty of each county clerk or trial court administrator as described in subsection (4) of ORS 8.070 for each of the courts for which he is clerk to:

" * * * * *

"(e) Attend the terms of the court of which he is a clerk, administer oaths and receive the verdict of a jury in any action, suit or proceeding therein, in the presence and under the direction of the court."

[7] ORS 204.601 provides:

"(1) The county court or board of county commissioners of each county shall fix the number of deputies and employes of county officers whose compensation is to be paid from county funds.

"(2) All such deputies and employes shall be appointed by such county officer, and shall hold office during the pleasure of the appointing officer."

ORS 204.630 provides:

"(1) Subject to ORS 204.601, the county clerk may appoint one or more deputies, who shall hold office during the pleasure of the county clerk. Such appointments shall be in writing, filed and recorded in the office of the county clerk. The county clerk so appointing and his sureties shall be responsible for the faithful performance of duties by the deputies.

Witcher was validly appointed as a deputy with the delegated power to administer oaths.[8]

However, the statutory provisions relied upon by the state which equate the functions of the "trial court administrator" with those of the "clerk" and the "clerk of the court" are limited by their own terms to those court administrators "described in subsection (4) of ORS 8.070 and ORS 205.110." ORS 8.070(4) provides:

> "In counties with a population of 400,000 or more, according to the latest federal decennial census, the trial court administrator as described in this section shall perform all duties prescribed in ORS 205.110."[9]

We take judicial notice that Lane County's population as of the 1970 federal decennial census was 215,401 persons. We also note that the legislative history of these statutory

---

> "(2) In the absence or inability of the county clerk to perform the duties of his office, a deputy shall perform such duties during the continuance of such absence or inability."

[8] Defendant contends that even if Witcher was validly appointed as a deputy clerk by the court administrator, his appointment was as a *county clerk,* whose authority is limited by ORS 205.110, to the administration of oaths in the presence of and under the direction of the court, in contradistinction to a *clerk of the court,* who has general statutory authority to administer oaths outside of the court's presence. *See* n 5, *supra.*

The state takes the position, however, that the distinction between the two types of clerks is merely a matter of semantics. We would note that the Oregon Constitution provides for the office of county clerk in Article VI, section 6, and also provides that the county clerk shall perform the duties of Clerk of the Circuit and District Courts. Or Const, Art VII (orig), § 15. We also note that these constitutional provisions do not apply to counties having a "home rule" charter. A charter

> "shall prescribe the organization of the county government and shall provide directly, or by its authority, for the number, election or appointment, qualifications, tenure, compensation, powers and duties of such officers as the county deems necessary. Such officers shall among them exercise all the powers and perform all the duties, as distributed by the county charter or by its authority, now or hereafter, by the Constitution or laws of this state, granted to or imposed upon any county officer. * * * " Or Const, Art VI, § 10.

Etter, *County Home Rule in Oregon,* 46 Or L Rev 251, 264-265 (1967). *See also* 39 Op Att'y Gen 7723 (Or 1979).

Therefore, whatever the relationship between the oath-giving powers of a county clerk and those of a clerk of the court might be in other Oregon counties, *see* 15 Op Att'y Gen 278-279 (Or 1930-32), there is no evidence before this court of the existence or functions of a county clerk in Lane County, as prescribed by the Home Rule Charter or by the Board of County Commissioners.

[9] *See* n 5, *supra.*

provisions indicates the legislature intended the functions be merged only in Multnomah County.[10] Therefore, ORS 8.070(5) and ORS 8.075, and references to the trial court administrator in ORS 205.110, are inapplicable in Lane County. ORS 8.070(1), applicable to Lane County, provides that:

> "In a single county judicial district described in ORS 3.011 with a population of 70,000 or more, according to the latest federal decennial census, the presiding judge may appoint a person to serve as *court administrator* subject to the approval of a majority of the judges of the circuit court. The *administrator holds office at the pleasure of a majority of the judges of the circuit court,* and *shall perform the functions prescribed by court rule adopted by the judges of the circuit court of the judicial district where appointed."*
> (Emphasis added.)

There is no evidence or citation in the record apprising either the trial court or this court of the functions of the Lane County Court Administrator as prescribed by Lane County Circuit Court Rule. Specifically, no statute or evidence that permits us to conclude the court administrator is authorized to give oaths or appoint deputies who are authorized to do so.

The fact that Witcher's appointment as a deputy county clerk was later confirmed and ratified by Phyllis Taylor, Acting Director of the Department of Judicial Administration and Court Clerk, does not provide us with any further evidence of Witcher's statutorily authorized powers, for the later ratification could not change Witcher's authority as of the time he purported to administer the oath to defendant.

■ ■ Whatever functions the Circuit Court Judges of the Second Judicial District (Lane County) may have prescribed for the court administrator in the rules, the rules

---

[10] Senate Bill 219, enacted as Chapter 594 of Oregon Laws 1977, added the provisions codified as ORS 8.075, added Section (4) and Section (5) to ORS 8.070, and added the references to the trial court administrator in Sections (1) and (2) of ORS 205.110. Testimony in the House Judiciary Committee Hearing on the bill makes it clear that the intent of these provisions is to transfer the clerk of the court functions to the court administrator.

The testimony was that this was the trend in Oregon, but that the bill presently applied only to Multnomah County in order to correct the "duplicative" administrative structure under both the court and the county.

are not before this court. Nor do we know what the administrative structure of Lane County may have been at the time. The record provides no evidence that Witcher had been expressly granted authority to administer the oath to defendant. Therefore, defendant's conviction for perjury based upon statements made under that oath cannot stand.[11]

Reversed.

---

[11] Defendant concedes facts which would support a conviction for the offense of Unsworn Falsification, ORS 162.085; however, that crime is not a lesser included offense of Perjury because it includes elements (the false statement must be made to a public servant in connection with an application for a benefit) which are not elements of Perjury. *State v. Washington,* 273 Or 829, 835, 543 P2d 1058 (1975). For this reason, this court cannot exercise its authority under amended Article VII, section 3, of the Oregon Constitution, to direct entry of a judgment of conviction for Unsworn Falsification. *See State v. Greenlaw,* 49 Or App 15, 618 P2d 1291, 50 Or App 97, 99, 622 P2d 325 (1981).