Submitted on record and briefs May 27, affirmed August 17, 1988

STATE OF OREGON,
*Respondent,*

*v.*

EVERETT EUGENE PROCTOR,
*Appellant.*

(86-09606; CA A46537)

759 P2d 316

Gary D. Babcock, Public Defender, Salem, filed the brief for appellant. With him on the brief was Diane L. Alessi, Deputy Public Defender, Salem.

Dave Frohnmayer, Attorney General, Salem, filed the brief for respondent. With him on the brief were Virginia L. Linder, Solicitor General, and Janet A. Klapstein, Assistant Attorney General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

**ROSSMAN, J.**

Defendant was convicted of perjury. ORS 162.065.[1] He assigns as error the trial court's denial of his motion for acquittal on the grounds that (1) the release officer who administered the oath under which he allegedly made a false statement did not have authority to administer oaths and (2), in any event, he did not make a false statement on his security release questionnaire. We affirm.

On the evening of October 24, 1986, defendant was arrested on a warrant for failure to appear on a driving while suspended charge and was taken to the Lane County Jail. He had been drinking heavily throughout the day and was also cited for driving while under the influence of intoxicants. Later that evening, in the office of the custody referee, defendant was interviewed by Gottsacker, a release officer, for information relevant to determining his eligibility for release from custody.[2]

At trial, defendant testified that he did not remember much about the interview. Gottsacker did not specifically remember defendant. However, she testified about her usual manner of conducting such interviews. At the outset of an interview, she administers this oath: "Do you swear the information you are about to give will be true and complete to the

---

[1]ORS 162.065(1) provides:

"A person commits the crime of perjury if the person makes a false sworn statement in regard to a material issue, knowing it to be false."

ORS 162.055 provides in part:

"(4) 'Sworn statement' means any statement knowingly given under any form of oath or affirmation attesting to the truth of what is stated."

[2] ORS 135.235 sets out the duties of release officers:

"(1) If directed by the presiding judge of the circuit court in a judicial district, a release assistance officer, and release assistant deputies who shall be responsible to the release assistance officer, shall be appointed under a personnel plan established by the Chief Justice of the Supreme Court.

"(2) The release assistance officer shall, except when impracticable, interview every person detained pursuant to law and charged with an offense.

"(3) The release assistance officer shall verify release criteria information and may either:

"(a) Timely submit a written report to the magistrate containing, but not limited to, an evaluation of the release criteria and a recommendation for the form of release; or

"(b) If delegated release authority by the presiding judge of the circuit court in the judicial district, make the release decision."

best of your knowledge?" The defendant is also asked to review and initial, if it is understood, each of these paragraphs of a security release questionnaire, which Gottsacker fills out:

"I, the defendant in this case on oath say that the information I provide herein is true and complete to the best of my knowledge.

"I understand that this information will be submitted to the court and custody referee for their consideration in setting security amount in my case and I know that to knowingly provide false information herein would constitute a crime and could also subject me to contempt and punishment therefor."

Defendant initialed those paragraphs on the questionnaire.

The printed form directs: "List all prior convictions." Gottsacker testified that, when filling in that part of the questionnaire, she asks, "Have you ever pled guilty or have you ever been convicted or pled guilty to any kind of a crime?" Defendant disclosed a drug conviction, but failed to reveal a 1983 conviction for assault and a 1977 conviction for driving while suspended.

Defendant admitted signing the two-page questionnaire at the completion of the interview. His signature appears below this paragraph:

"I, Everett Eugene Proctor, being first duly sworn, say that the foregoing statement is true and complete as I verily believe."

Gottsacker verified that oath over the title of "Custody Referee or Deputy Court Clerk." The oath and order of appointment of Gottsacker as a "Deputy Court Clerk" on October 2, 1984, by the Court Administrator is also in evidence. It indicates that the oath was administered by a "Management Assistant" of the Second Judicial District (Lane County).

■ The state concedes that a conviction for perjury cannot be predicated upon an oath taken before a person lacking express statutory authority to administer oaths. *State v. Craig,* 94 Or 302, 185 P 764 (1919); *State v. Flamer,* 54 Or App 17, 633 P2d 860 (1981). The issue here is whether Gottsacker had the authority.

Defendant argues that the court administrator has no statutory authority to appoint deputy court clerks and that,

even if the authority exists, no statute specifically authorizes those clerks to administer oaths. He relies on *State v. Flamer, supra.*[3] However, since *Flamer,* the legislature has enacted ORS 8.225(1), which specifically provides that trial court administrators and court clerks have the duties, powers and functions prescribed for a county clerk as clerk of the court:

> "The trial court administrator for a judicial district or for a circuit or district court, and the trial court clerk for a county or for a circuit or district court, has the duties, powers and functions prescribed by law or by rules of the circuit or district courts in the district or for the county for the clerk or court administrator of a circuit or district court in the district or for the county, including duties, powers and functions so prescribed for a county clerk as clerk of the circuit and district courts."

A county clerk is authorized, under ORS 204.601(2), to appoint deputies:

> "(1) The county court or board of county commissioners of each county shall fix the number of deputies and employes of county officers whose compensation is to be paid from county funds.
>
> "(2) All such deputies and employes shall be appointed by such county officer, and shall hold office during the pleasure of the appointing officer."

The duties of court administrators and trial court clerks set forth in ORS 8.225(2) include administering oaths. Moreover, both the court administrator, having the powers, duties and functions prescribed for the county clerk as clerk of the court, and Gottsacker, having been appointed deputy court clerk, have general authority to administer oaths under ORS 44.320, which provides:

> "Every court, judge, clerk of a court, justice of the peace or notary public is authorized to take testimony in any action or proceeding, as are other persons in particular cases authorized by statute or the Oregon Rules of Civil Procedure. Every such

---

[3] In *Flamer,* we held that there was no specific statutory authority for administration of an oath by a release assistance officer and no statute, local court rule or evidence was presented from which it could be concluded that a court administrator who appointed a release officer and designated him as a "deputy county clerk" was authorized to give oaths or appoint deputies to do so. Therefore, the defendant could not be convicted of perjury for giving false information under oath on a security release questionnaire to the deputy county clerk.

court or officer is authorized to administer oaths and affirmations generally, and every such other person in the particular case authorized."

Because the court administrator has express statutory authority to administer oaths and to appoint deputies to perform his duties, and because the court administrator acted within that authority here, Gottsacker was validly appointed a deputy with the delegated power to administer oaths.

■ We now turn to defendant's contention that he did not make a "false statement" when he disclosed only one of his three criminal convictions in response to Gottsacker's inquiry about his prior convictions. Although the printed questionnaire directs: "List all prior convictions," Gottsacker orally asked, "Have you ever pled guilty or have you ever been convicted or pled guilty to any kind of crime?"

Whether defendant made a false statement is a question of fact. *State v. Duncan,* 15 Or App 154, 515 P2d 191 (1973). Before being interviewed, defendant swore orally, and by initialing the first paragraph of the questionnaire, that the information he was about to give would be "true and complete." He indicated by initialing the second paragraph that he understood that oath and that knowingly to provide false information on the questionnaire would constitute a crime. After completing the interview, defendant signed the questionnaire, again swearing that the information was "true and complete." There is no dispute that defendant knew that he did not disclose his complete criminal record. There was sufficient evidence to show that the defendant's verifications that the information on the questionnaire was "true and complete" were false.

The signed security questionnaire constituted a "sworn statement" which was false by its omission of facts. The trial court did not err in denying defendant's motion for judgment of acquittal.

Affirmed.