STATE OF OREGON,
*Respondent,*

*v.*

WILLIAM WAYNE HANSEN,
*Appellant.*

(No. C 8005-31665, CA 19706)

635 P2d 390

Wayne Mackeson, Certified Law Student, Portland, argued the cause for appellant. On the brief was Des Connall, P.C., Portland.

Stephen F. Peifer, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

THORNTON, J.

## THORNTON, J.

The question presented by this appeal is the legality of a police entry of defendant's residence, the "securing" of the residence by the police while an officer procured a search warrant and the subsequent search of the premises after the warrant arrived. More precisely, the issue is whether the actions of the police in "securing" defendant's residence rendered illegal a subsequent search with a search warrant issued in reliance on information other than that gained during the entry and "securing" of the residence.

Defendant appeals from a judgment of conviction for possession of a controlled substance. His sole assignment of error is the denial of his motion to suppress a quantity of marijuana seized after the warrant was obtained.

The essential facts are as follows:

Portland police, for two months, had been conducting an undercover investigation of defendant for suspected marijuana dealing. One of the officers had gained the confidence of Wayne Bradshaw, who was believed to be obtaining his supply of marijuana from defendant. On the date in question, Officer Sawyer telephoned Bradshaw in an attempt to buy a few pounds of marijuana. On two previous occasions, Bradshaw had delivered an ounce of marijuana to Sawyer. Both times, police had observed Bradshaw go to defendant's home before making the delivery.

At 3 p.m., pursuant to the telephone call, Sawyer met with Bradshaw in a restaurant parking lot to negotiate the sale. In working out the details, Bradshaw made four trips back and forth between Sawyer and defendant's home (located five or six blocks away), all under the observation of two police surveillance units. During this time, Bradshaw told Sawyer that the high quality marijuana Sawyer was attempting to buy was not available, but there was a "shopping bag" full of lower quality marijuana at his supplier's house. When Bradshaw last left Sawyer in the parking lot at 4:47 p.m., he agreed to return with a pound of the lower quality marijuana. The officers knew of no

reason why Bradshaw would not have delivered the marijuana, and Bradshaw was unaware that Sawyer was a police officer.

Instead of waiting, Sawyer radioed his surveillance units and told them to "secure the residence," if Bradshaw went back to defendant's home. The officers in the surveillance units understood that they were to enter the house, arrest Bradshaw and defendant and "secure the premises for execution of a search warrant."

Two uniformed officers, Runnels and Muncy, went to the front door at 4:54 p.m. and knocked; defendant answered. As a pretext, Muncy told defendant that he had information about a car defendant had previously reported stolen; defendant allowed the officers in. Once inside, the officers drew their guns and arrested defendant and Bradshaw for possession of a controlled substance. The officers had neither an arrest warrant nor a search warrant.

Runnels searched defendant and found a small handgun. Minutes later, plainclothes officers Bell, Saylor, Lambert and Conlee entered the house. After handcuffing Bradshaw and defendant, the officers walked through the rest of the house and looked in closets for other persons. During this time, officers discovered several guns in various parts of the house. The officers radioed back to Sawyer and told him "the residence has been secured" and "two people inside were secured." Officers Sawyer and Nyberg went into the house and then left to prepare a search warrant affidavit.

Officer Saylor asked defendant for permission to search the house, but defendant declined, saying he first wanted to speak with an attorney. The officers held Bradshaw and defendant, handcuffed, in defendant's living room for two and a half hours until Sawyer and Nyberg arrived with a search warrant at 7:28 p.m. The officers then commenced an hour-long search of the house. The search uncovered two quantities of marijuana: a "plastic baggie" atop a bookcase in the living room, and a larger quantity behind a radio in a small room just off the master bedroom. The officers then seized both quantities.

The trial court's findings and conclusions were as follows:

"THE COURT: * * * Well, the Court is of the opinion that [the officers] had probable cause to arrest; however, absent exigent circumstances, probable cause to arrest doesn't justify a forced entry into the home of the suspect. Such probable cause justifies only the issuance of a warrant. The fact situation, as the Court interprets it, finds there was not exigent circumstances. Now, the question of how they got in the place, I think the case law is clear, if there is subterfuge used to enter, under those conditions it would not support a search, and to say constitutionally proscribed trickery in which an officer obtains entry by subterfuge to a place where he has no right to be — the stratagem in itself is not illegal. It may be, for example, to gain entry in order to effect a lawful arrest. Here the police had no right to be in the [defendant's] residence without a warrant, absent exigent circumstances, so when they entered and found this Browning weapon, the .25 caliber semi-automatic and this other weapon there, this gas gun, those things were taken as a result of that initial entrance and should be suppressed.

"* * * * *

"Now, they remained there, then they went out and got a warrant, until about 7:30, and located some marijuana, and the Court is of the opinion that the police had sufficient independent information based on prior surveillance of [defendant's] residence and prior contacts between [defendant] and Bradshaw, the informant, and Deputy Sawyer to establish probable cause for the issuance of a search warrant of this type. This search was not tainted by the illegal warrantless arrest, so therefore, in respect to the marijuana the Court makes the finding that part of the motion should be suppressed and part should be denied, based on my finding of possession of the substance here, not — the ex-con is out but the other is in, and we'll order a presentence report.

"MR. CONNALL: The Court is making a guilty finding as to possession of a controlled substance —

"THE COURT: Yes."

Defendant argues that the act of "securing the premises" constituted a separate seizure apart from the warrantless entry and was not justified by exigent circumstances; that by seizing defendant's residence, the police necessarily illegally seized the contents of the residence; that suppression is warranted as a deterrent to such illegal police conduct.

On the basis of our examination of this record we conclude that the trial court did not err in denying defendant's motion to suppress. Assuming without deciding that the police entry into and securing of defendant's residence was illegal, we are satisfied that that did not vitiate the subsequent search with a search warrant issued in reliance on information other than that gained during the entry and "securing" of the residence. *State v. O'Keefe,* 40 Or App 685, 596 P2d 987, *rev den* 288 Or 81 (1979). As the United States Supreme Court pointed out in *Wong Sun v. United States,* 371 US 471, 487-88, 83 S Ct 407, 9 L Ed 2d 441 (1963):

> "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made was come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."

*Accord: State v. Quinn,* 290 Or 383, 623 P2d 630 (1981); *State v. Kennedy,* 290 Or 493, 624 P2d 99 (1981).

Affirmed.