## STATE OF OREGON,
*Respondent,*

*v.*

## CLAYTON LAMONT HOWARD,
*Appellant.*

(C81-09-34472; CA A35782)

711 P2d 194

Phillip M. Margolin, Portland, argued the cause and filed the brief for appellant.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

██ This is a delayed appeal[1] from convictions for robbery in the first degree and rape in the first degree. ORS 164.415; ORS 163.375. Defendant urges that his convictions should be reversed because certain evidence used against him was obtained by means of an unconstitutional search of his motel room. We hold that the error, if any, was harmless.[2] We therefore again affirm the convictions.

A man found his way into the victim's home sometime between 2:30 and 3:00 on the morning of September 15, 1981. He had an ace bandage on one arm covering something hard, like a brace. While in the victim's home, he cut the telephone cord, threatened her with a can of mace, threatened to harm her son, took various items of jewelry and raped her. He also took an automatic teller machine credit card and forced her to give him the access code, threatening to harm her child at school if she gave him the wrong code. The man left a little before 4:00 a.m. At 4:18 a.m., someone used the card in a machine 1.2 miles from the victim's home and took $200 from

---

[1] Defendant previously appealed, and we affirmed the convictions from the bench. *State v. Howard,* 60 Or App 331, 653 P2d 1023 (1982), *rev den* 294 Or 491 (1983). Defendant received the right to a delayed appeal on the issues he now raises as the result of post-conviction proceedings establishing the incompetence of his original appellate counsel.

[2] Defendant argues that we cannot consider whether the alleged error was harmless because the post-conviction court necessarily found that it was not harmless, and that the state's failure to appeal that court's judgment makes its implicit finding to that effect the law of the case. Defendant points out that we have said that a person seeking post-conviction relief on the ground of incompetence of counsel "must not only show counsel's incompetence, but also that he was prejudiced thereby." *Storms v. Cupp,* 13 Or App 273, 277, 508 P2d 450, *rev den* (1973). Contrary to defendant's apparent understanding of *Storms,* we did not hold that a grant of post-conviction relief for inadequacy of appellate counsel requires the post-conviction court to hold that a competently-presented appeal would have been successful. Such a position would require the post-conviction court to determine the merits of the appeal, and the state could challenge its determination only by a direct appeal from the post-conviction judgment. Under that approach, there would never be a delayed appeal of the sort which is now before us. This is not a correct construction of *Storms.* Rather, defendant has been prejudiced if appellate counsel failed to raise an issue for which there is support in the record and which, if it were held to be meritorious, might justify reversal of the conviction. The post-conviction court, rather than turning itself into an appellate court and deciding the merits, as defendant would require, simply determines whether there is probable cause to present the merits to the appellate court and whether appellate counsel was inadequate in failing to do so. It acts as a door keeper, weeding out frivolous claims and sending the potentially meritorious ones on for decision.

her account. At 4:41 a.m., an officer saw defendant walking about five or six blocks from the victim's home. The officer stopped him and questioned him about a different rape.[3] At that time, defendant had a can of mace and a watch similar to the one taken from the victim. He also wore an ace bandage covering a plaster cast on one arm and had a wad of money. The police released him after questioning; he kept the items after his release.

The victim identified defendant from a photographic display. Detective Findling then talked with the officer who had stopped defendant and learned what he had observed in defendant's possession. Findling obtained an arrest warrant on September 16; defendant was arrested that evening. Findling talked with him in the early hours of September 17. At that time, defendant was wearing one of the rings and the necklace which had been taken from the victim. He also had a motel room key. He told Findling that he had forgotten to return the key when he had stayed at the motel several weeks previously.

Findling called the motel but received no answer; he then asked that a patrol officer go to the motel and determine whether defendant was currently registered there. The dispatcher misunderstood the request and told the officer to go into the room. The officer learned that the room was currently rented to defendant, obtained a key from the manager, unlocked the door and went in. He saw several items related to the crime. The officer called Findling from the room and told him where he was. After checking with a deputy district attorney, Findling told the officer to leave the room and to secure it with a lock on the door. Findling obtained a search warrant later that day, searched the room and seized a number of items from it.

On appeal, defendant asserts that the trial court erred in failing to suppress evidence of the items taken from the motel room, arguing that they were seized when the officer locked the door and that that warrantless seizure was illegal.

---

[3] The victim did not report the crimes until 9:00 a.m. She was unable to patch the phone cord where the intruder had cut it and did not want to leave her home while it was dark.

*See State v. Hansen,* 295 Or 78, 664 P2d 1095 (1983).[4] We do not decide this issue, because any improperly admitted evidence was harmless under any standard. Three things taken from the motel room were admitted into evidence: a ring, a gold cross and a woman's watch. The victim identified each item as hers; they were relevant to show what she had lost in the robbery and to corroborate her identification of defendant as the perpetrator. In addition to those items, the state also introduced a ring and a necklace which defendant was wearing when he was arrested. The victim testified that those things were hers and gave the background history of the ring. The officer who stopped defendant soon after the crime also testified that, at that time, he had a woman's watch similar to the one taken from the victim, had an arm bandaged in a manner like that observed by the victim and had a can of mace.

Defendant does not challenge the victim's account of what happened, and his attempts to undermine her in-court identification of him as the perpetrator were weak. His story of how he acquired the ring and the necklace he was wearing when arrested was hardly believable, and he admitted that he had given six false stories to Findling before coming up with the final one. The corroborating circumstances were strong. Defendant was in the area with fruits of the robbery and an unexplained amount of money at a time which fit the time that it would have taken the perpetrator to walk to the bank machine, withdraw the money and return. Defendant had a can of mace, and the victim had been threatened with mace. His arm was bandaged, as was the attacker's. He had some of the victim's jewelry and a watch which looked like hers. The additional evidence of two other pieces of jewelry and the actual watch simply added a little to the balance which was already very heavily weighted against defendant's innocence. The evidence of defendant's guilt was substantial and convincing without it. There is little, if any, likelihood that the asserted error affected the verdict. Any error was harmless.

---

[4] *State v. Hansen, supra,* was pending before the Supreme Court at the time of the trial and the original appeal in this case. Our opinion in *Hansen* had held that the original illegality was cured by a subsequent warrant which did not depend on any illegally acquired information. *State v. Hansen,* 54 Or App 465, 635 P2d 390 (1981).

*See State v. Miller,* 300 Or 203, 220-21, 709 P2d 225 (1985); *State v. Van Hooser,* 266 Or 19, 511 P2d 359 (1971).[5]

Affirmed.

---

[5] *State v. Hansen, supra,* is probably based on Article I, section 9, of the Oregon Constitution. The rule under the Fourth Amendment appears to be closer to our decision in *Hansen* than to that of the Oregon Supreme Court. *See Segura v. United States,* 468 US ___, 104 S Ct ___, 82 L Ed 2d 599 (1984). However, accepting the possibility that *Hansen* may also be correctly based on the Fourth Amendment, we hold that any error was harmless beyond a reasonable doubt. *Chapman v. California,* 386 US 18, 87 S Ct 824, 17 L Ed 2d 705 (1967)