Argued and submitted June 23, reversed and
remanded for new trial December 1, 1980

STATE OF OREGON,
*Respondent,*

*v.*

ROBERT LEROY QUICK,
*Appellant.*

(No. 19-060, CA 16659)

619 P2d 1347

Marianne Bottini, Deputy Public Defender, Salem,
argued the cause for appellant. With her on the brief was
Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem,
argued the cause for respondent. On the brief were James
M. Brown, Attorney General, Walter L. Barrie, Solicitor
General, and Virginia L. Linder, Certified Law Student,
Salem.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

WARDEN, J.

**WARDEN, J.**

Defendant was convicted, after jury trial, of kidnapping in the second degree, ORS 163.225, and assault in the fourth degree, ORS 163.160. On appeal, he argues that the trial court erred in admitting testimony by two witnesses concerning defendant's possession and use of marijuana and LSD.

The evidence at trial with respect to the actions of defendant and the victim on the night in question was sparse and somewhat confusing due to the inability of the victim and other witnesses to remember details about the events. Nevertheless, the evidence tended to establish in pertinent part the following.

Late on the evening of November 19, 1978, the victim, Ramona, and her father's friend, Dorothy, entered Captain B's, a bar. After sitting at a table and ordering drinks, Ramona and Dorothy each had part of a drink and became ill. Neither woman was intoxicated at the time. Dorothy left the bar and fell asleep in her car, which was parked nearby. Ramona went to the restroom and later came out and sat at a table in the bar. Sometime around midnight defendant offered to drive Ramona to her home, and the two left Captain B's together. Ramona passed out in defendant's car and awakened with her pants pulled partially down and defendant on top of her. Defendant struck her several times. When Ramona had a chance to observe her surroundings, she noticed that they were near her father's home and asked to be let out of the car. Instead, defendant continued driving for approximately ten miles before he let Ramona out.

During the state's case in chief, Cole Owens, the doorman at Captain B's, testified that approximately two hours before defendant and the victim left the bar, defendant told Owens that he had some LSD and was going to take some. Defendant assigns error to the trial court's admission of this testimony over timely objection, arguing that the statements were evidence of prior crimes, which is generally inadmissible. *State v. Manrique,* 271 Or 201, 531 P2d 239 (1975).

In *Manrique,* the court stated that this general rule is a product of the application of certain well-established rules of evidence:

> "The fundamental rule of evidence is that in order to be admissible evidence must be relevant, i.e., have some probative value to prove some issue in a case, and that all relevant evidence is admissible unless it falls within one of the so-called 'exclusionary' rules of evidence. See *Trook v. Sagert,* 171 Or 680, 688, 138 P2d 900 (1943), and *State v. Kristich,* 226 Or 240, 244, 359 P2d 1106 (1961). It is equally well established that evidence may be rejected, although relevant, if its probative value is outweighed by various other considerations, including the danger of prejudice. McCormick on Evidence 438, § 185 (2d ed 1972). See also *State v. Zimmerlee,* 261 Or 49, 54, 492 P2d 795 (1972), and *State v. Harrison,* 253 Or 489, 491, 455 P2d 613 (1969)." 271 Or at 205.

The state argues that the testimony in issue here is relevant to "complete the picture of defendant's activities leading up to the commission of the crime." *State v. Hockings,* 29 Or App 139, 146, 562 P2d 587, *rev den* (1977); *see State v. Drew,* 8 Or App 471, 476, 494 P2d 270, *rev den* (1972).

In *State v. Hockings,* the court explained the rationale of admitting such testimony:

> "An eye witness to an event should be permitted to testify in a natural manner about what he observed. This ordinarily includes such background facts as where the witness was, how he happened to be there, and what interrelationship he may have had with other persons present at the event about which the witness testifies. Otherwise the testimony of the witness may seem distorted, improbable, or incredible to some degree. To strip away such background evidence may well result in an artificial or false picture of what occurred." 29 Or App at 146, *quoting from McKee v. State,* 488 P2d 1039, 1041 (Alaska 1971).

There was no evidence at trial that defendant took any LSD on the evening in question. His bare statement that he was going to do so was made two hours before he left the bar with the victim and apparently before the victim arrived at Captain B's. Other evidence was introduced at trial relating to defendant's activities at the bar that evening, including whom he talked to and danced

with, how much he drank, and whether he was intoxicated. We conclude that in light of this other evidence, whatever significance the disputed testimony had as background was at best minimal and that the absence of the testimony would not affect the believability of the rest of the witness' recount of the evening's events.

The state also contends that the testimony in question disclosed one possible explanation for the means by which the defendant had the opportunity to commit the crimes. From the testimony of defendant's admission that he possessed LSD, combined with the victim's sudden illness and other circumstances, the state suggests that there is a permissible inference that defendant drugged the victim's drink so he could take her from the bar and make sexual advances. There was no evidence, however, to show that defendant was anywhere near the victim's drink when it was prepared or served or that the victim's symptoms were consistent with having ingested LSD. Since the conclusion that defendant drugged the victim's drink would be totally speculative, we reject this contention.

We next address the question of whether the admission of this evidence was so prejudicial to the case as to require reversal. Standing alone, the evidence that defendant possessed and intended to use LSD would be prejudicial and require reversal. *See State v. Pruitt,* 34 Or App 957, 961, 580 P2d 201 (1978). Here, the deputy district attorney referred directly to the disputed testimony during closing arguments. The evidence against defendant, although strong, was not overwhelming. In the context of this case, we conclude that the prejudicial effect of the challenged testimony outweighs any value it had as background and, therefore, it was error for the court to admit the evidence.

The state, however, contends that any error was rendered harmless by the proper admission of similar testimony later in the trial. Robert Medley, a bartender at Captain B's on the night in question, testified for the prosecution. On cross-examination, the defense attempted to establish the witness' bias against defendant. In doing so, defendant "opened the door" to rehabilitation evidence which explained that Medley was biased because defendant distributed drugs. Assuming that the trial court did not

abuse its discretion in admitting the rehabilitation evidence of Medley,[1] we conclude that admission of that evidence did not render harmless the prejudicial error committed in admitting Owens' testimony.

Reversed and remanded for new trial.

---

[1] *See Bracey v. United States,* 142 F2d 85 (D.C.Cir.), *cert denied,* 322 US 762, 64 S Ct 1274, 88 L Ed 1589 (1944).