Argued and submitted June 10, reversed and remanded for new trial
September 18, 1985

## STATE OF OREGON,
*Respondent,*

*v.*

## JAMES EDWARD PEACOCK,
*Appellant.*

## (10-83-02921; CA A33754)

706 P2d 982

Jay W. Frank, Eugene, argued the cause for appellant. With him on the brief was Moule & Frank, Eugene.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Defendant appeals his conviction for assault in the first degree, ORS 163.185, and his subsequent sentencing as a dangerous offender. ORS 161.725. Among the claimed errors are the trial court's admission of evidence of previous altercations in which defendant was involved and its permitting the prosecutor to mention defendant's filing of a notice of intent to rely on a mental disease or defect defense. He also attacks a jury instruction which allowed the jury to convict him without finding that he intended to cause serious physical injury to the victim. We agree that the evidence of previous altercations was inadmissible and that the instruction was inadequate.[1] We therefore reverse and remand for a new trial.

Defendant and the victim had known each other for three years, during which time they had become close friends. They met originally at the Sidetrack Tavern in Eugene, where they were among the regular customers. At different times they lived in the same apartment, and they and their girlfriends went to Utah together. The women worked together in a tavern in Utah. At the time of the incident involved in this case, both defendant and the victim had moved back to Eugene. The victim and his girlfriend had broken up, and for a while the victim lived with defendant and defendant's current girlfriend. The victim moved out shortly before the assault. Defendant and the victim remained on good terms, but they had had several arguments. Their social lives centered on the Sidetrack Tavern, and some of their arguments occurred there. When they got angry, they raised their voices and threatened each other verbally and physically.

On March 4, 1983, defendant and the victim were in the Sidetrack Tavern and got into another argument. Each later claimed that the other began it. During the argument, defendant took a beer glass and broke it. Defendant testified that he did so because he was afraid of the victim and intended to scare him into backing off. The victim did not retreat, but moved toward defendant. According to defendant, the victim threatened him with his artificial right hand. Defendant previously had seen the victim use his hand as a weapon.

---

[1] Defendant's other assignments of error do not require discussion.

When the victim failed to withdraw, defendant pushed the broken glass into the victim's face, injuring his left eye so badly that it had to be removed.

■. Defendant was charged with first degree assault. His defenses were self defense and lack of intent to cause the injury. On direct examination, he testified concerning his earlier altercations with the victim in an attempt to show the victim's aggressiveness. He also testified that he had previously seen the victim use his prosthetic hand to hurt someone. He added that the victim often got belligerent when he drank and that defendant backed off in those circumstances, because he did not want to get "into it" with the victim. Defendant testified that he did not remember actually stabbing the victim with the glass but that, in any event, he did not intend to cause him serious harm. Defendant's current girlfriend also testified for the defense concerning the previous arguments at the tavern. Although this testimony incidentally portrayed defendant as avoiding conflict with the victim, its purpose was to show the victim's aggressiveness, not defendant's peacefulness. We conclude from our examination of the record that, contrary to the state's position, defendant did not, by testimony of a specific instance of peaceful conduct, put his character for peacefulness in issue. OEC 405(1).

■ On cross-examination, the prosecutor asked defendant, over objections, about an incident in Utah in which he allegedly stabbed someone outside a bar and the victim used his prosthetic hand in rescuing defendant from attackers, about whether he always walked away from fights in bars and about an alleged threat he made two weeks after he injured the victim to the effect that he would come back and finish the job. On rebuttal, the state presented extensive evidence concerning all of these incidents. None of them had resulted in defendant's arrest or conviction for any offense. This evidence of other bad acts would therefore normally be inadmissible. OEC 404.[2] The state asserts that the evidence was admissible

---

[2] OEC 404 provides in part:

"(2) Evidence of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:

"(a) Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same;

either to disprove defendant's supposed claim that he had a peaceful character, OEC 404(2)(a), or to prove intent and absence of mistake or accident. OEC 404(3). We have held that defendant did not put his character for peacefulness in issue, and the evidence is therefore not admissible under OEC 404(2)(a). We turn to its admissibility under OEC 404(3).

■■ Evidence of a defendant's prior mistreatment of an assault victim may tend to establish intent to assault that particular victim and thus to negate the likelihood of accident, inadvertence or self-defense. The evidence is therefore generally admissible. *State v. Mills,* 39 Or App 85, 88, 591 P2d 396 (1979). However, in this case the state used the evidence, not to show defendant's hostility to the victim, but to show his alleged general aggressiveness and violent character. The evidence was relevant only to show an increased likelihood that defendant would assault anyone who got in his way. That is precisely what OEC 404(3) prohibits. None of the exceptions to that prohibition is applicable.

That defendant may have intentionally attacked someone else is at best marginally probative of his intent to attack this victim and, thus, of the absence of mistake or accident in the injury he caused. In *State v. Parks,* 71 Or App 630, 634, 693 P2d 657 (1985), we held that evidence of an alleged 20-year old altercation was inadmissible because it did not tend to prove the defendant's state of mind at the time of the assault for which he was on trial or to prove that there was no mistake or accident. Although the incidents in this case are not as remote as was the incident in *Parks,* the same considerations apply: the probative value of the incidents is minimal, while the possibility of prejudice—that the jury will convict defendant because of his general bad character rather than on

---

"(b) Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same or evidence of a character trait of peacefulness of the victim offered by the prosecution to rebut evidence that the victim was the first aggressor;

"\* \* \* \* \*

"(3) Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

the basis of the facts of the case—is great. It was error to admit this evidence, and the error requires a new trial.

Defendant also asserts that the prosecution improperly introduced testimony that at one time his attorney filed a notice of intent to rely on a mental disease or defect defense. *See State v. Hickan,* 71 Or App 471, 692 P2d 672 (1984). We need not decide whether evidence of the notice would be inadmissible in this case, as it was in *Hickan,* because, in fact, no evidence was admitted. On cross-examination, the prosecutor asked defendant:

"Q. You didn't have another idea about how you'd get out from under this thing?

"A. I can't have another idea. The fact of how it happened, happened, you know.

"Q. Uh-huh.

"A. I can't change, you know, what happened or the circumstances.

"Q. Didn't you think for a whole *[sic]* that maybe what happened that Friday, the fact that you had seen your psychiatrist, that there might be another angle out that way?

"A. No, sir.

"Q. Did you cause anything to be filed in this case?

"A. No.

"[DEFENDANT'S ATTORNEY]: I'll object, Your Honor. The pleadings in this case are totally irrelevant to anything this witness might have to say.

"And I'm suggesting further that this is just devastatingly prejudicial, in the sense that it misrepresents the occurrence. And I'm going to once again ask for a mistrial.

"THE COURT: Motion's denied. Objections overruled.

"Q. [By the Prosecutor]: Didn't you decide for a while that you were going to try to beat this thing with a mental defense?

"A. With a what?

"Q. Mental defense?

"A. No.

"Q. Not guilty by insanity?

"A. No. It was a question brought up about the medication.

"Q.   Uh-huh.

"A.   You know, that I was on. I was under the impression that I was on chlorpromazine, which is the generic name for thorazine. And I didn't know it at the time. And when I found out it was thorazine, I didn't even know, you know, what it was until then. And it was just questions asked between me and my attorney, and that's about it.

"Q.   Okay. You didn't contact the psychiatrist to see if he'd come in and give you a mental defense?

"A.   No, I didn't."

■   The court's decision as to the motion for a mistrial was correct. As of the time it was made, no harm to defendant's case justifying that extreme sanction had occurred. As to the further examination, assuming that defendant's objection was understood to cover it, as well as the question concerning the notice of intent, we agree that it represented too extensive an inquiry into an irrelevant and prejudicial area. However, because we reverse this case on another ground, we simply note that, on retrial, this line of inquiry is inappropriate.

■   We next consider defendant's challenge to one of the court's instructions. ORS 163.185(1) provides that a person commits assault in the first degree "if he *intentionally causes serious physical injury* to another by means of a deadly or dangerous weapon." (Emphasis supplied.) The court instructed the jury that the state could prove defendant guilty of first degree assault if it proved "*an intent by the defendant to injure* the victim. The state does not have to prove that he intended all of the consequences of the act."[3] (Emphasis supplied.) Under the court's instruction, the jury could convict defendant without finding that he intended to cause *serious* physical injury to the victim. Defendant argues that the instruction violates the requirement that the state prove that he acted "with a culpable mental state with respect to each material element of the offense that necessarily requires a culpable mental state." ORS 161.095(2); *see also State v. Blanton,* 284 Or 591, 588 P2d 28 (1978). We agree.

■■   The correctness of defendant's view emerges from a

---

[3] The court reinstructed the jury in essentially similar language in response to a question it asked during its deliberations.

review of the interrelationship of the various degrees of assault. A person commits assault in the third degree if he "[r]ecklessly causes serious physical injury to another by means of a deadly or dangerous weapon * * *." ORS 163.165(1)(a). The crime of assault in the second degree is committed if the person "[i]ntentionally or knowingly"—a higher level of fault or responsibility—"causes serious physical injury to another," or if the person "[i]ntentionally or knowingly causes physical injury to another by means of a deadly or dangerous weapon * * *." ORS 163.175(1)(a), (b). The legislature thus has distinguished levels of culpability for assaults, grading them according to the defendant's mental state and to the harm done. For the purposes of this case, the crucial elements are intent, the use of a deadly or dangerous weapon, and causing *serious* physical injury. Second and third degree assault, in their various forms, involve different combinations of two of these three elements; only in first degree assault must all three coalesce. The court's instruction, by failing to require all three, wholly fails to distinguish between first degree assault and second degree assault by intentionally causing physical injury by means of a deadly or dangerous weapon.

■ ■ The state argues that the instruction was proper, because the correct distinction between first and second degree assault is the actual injury the defendant caused, not the level of injury the defendant intended. However, an analysis of the assault statutes shows that the defendant's intent is crucial to the distinctions among them. A person who causes a serious physical injury with a dangerous weapon but who only intends to cause a minor injury has either acted recklessly as to the seriousness of the injury—and is, thus, guilty of third degree assault—or has acted intentionally as to the physical injury—and is, thus, guilty of second degree assault. The distinction between these two degrees and first degree assault must be that the intent required for first degree assault is to cause a serious physical injury; no other distinguishing feature remains. It is not necessary, of course, that the defendant intended the *precise* injury which the victim suffered; however, to be guilty of first degree assault, the defendant must have intended that the injury be serious. This construction comports with the requirement that the defendant act with a culpable mental state as to all elements of the

offense. It is also consistent with previous Oregon law on mayhem, which was the predecessor of first degree assault. *See State v. Cody,* 18 Or 506, 512-13, 23 P 891, 24 P 895 (1890) overruled on other grounds, *State v. Foot You,* 24 Or 61, 70, 32 P 1031, 33 P 537 (1893).

In this case, the state and defendant stipulated that the victim suffered a serious physical injury and that the broken beer glass was a dangerous weapon. If the jury rejected defendant's self-defense claim, the only issue was defendant's intent. By its charge, the court lowered the state's burden on that issue to that appropriate for second or third degree assault. The court should not give the same instruction on retrial.

Reversed and remanded for a new trial.