Argued and submitted June 28, 1985, affirmed February 12, reconsideration denied
April 11, petition for review denied June 17, 1986 (301 Or 240)

# STATE OF OREGON,
*Respondent,*

*v.*

# JOHN JACKSON HARMON,
*Appellant.*

(C84-05-32384; CA A33803)

714 P2d 271

Phillip M. Margolin, Portland, argued the cause and filed the brief for appellant.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General and James E. Mountain, Jr., Solicitor General, Salem.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

Defendant appeals his convictions for manslaughter, felony murder and robbery in the first degree. We affirm.

On the morning of November 29, 1983, police found the body of Ted Lotze in his residence in Lake Oswego. He had been beaten, tied, and gagged and had died of asphyxiation during the previous night. Several items of personal property had been taken from his residence. Defendant was indicted for the crimes. Before trial, pursuant to ORS 135.455, he filed a notice of alibi with the court. It stated that on November 28, 1983, defendant was at the home of Vernon and Barbara Frischman and that he intended to introduce the testimony of his brother, Charles, in support of his alibi.[1]

At trial, the state presented substantial evidence, including the testimony of Charles, that tended to prove that defendant, Troy Frischman and Kenneth Meeds, planned and carried out the robbery of Lotze and killed him. Defendant did not offer the alibi evidence. He admitted that he had been involved in the robbery, but he denied that he was responsible for the victim's death. He testified that he first met Lotze just before November 28 and that he, Frischman and Meeds had formulated a plan in which defendant would get Lotze out of his house while the other two removed property from the house. Defendant arranged to meet the victim in downtown Portland and then went to the house. Defendant testified that, before he was able to get him out of the house, the victim made a homosexual pass at him and later attacked him and that, to defend himself, he knocked Lotze unconscious. He testified that, although he had abandoned the idea of burglarizing the house, he was stranded there until his friends arrived. Defendant testified that, when Meeds and Frischman arrived, they tied and gagged Lotze and burglarized the house and then the three of them left the residence together. After all the testimony was completed, the state offered and the court admitted defendant's notice of alibi over his objection. In its closing

---

[1] Defendant's notice of alibi stated:

"Pursuant to ORS 135.455, defendant, John Jackson Harmon, notifies the State that on November 28, 1983, the date alleged in the indictment, he was at the home of Vernon and Barbara Frischman, 516 S.W. 9th Circle, Troutdale, Oregon. Defendant intends to introduce the testimony of Charles Harmon, 516 S.W. 9th Circle, Troutdale, Oregon in support of this evidence."

argument, the state argued, over defendant's objection, that the notice was evidence of his "propensity to lie."

■　　Defendant asserts that the notice of alibi constitutes a compelled and coerced statement and that its admission was error because it violated Article I, section 12, of the Oregon Constitution and the Fifth Amendment.[2] Article I, section 12, states that "No person shall * * * be compelled in any criminal prosecution to testify against himself." The state argues that the notice was not testimonial, because it was not a statement of historical fact but simply defendant's statement of what he proposed to do at trial. We do not need to decide if the notice was testimonial, or compelled, or if it was error for the court to admit it in evidence or to permit the prosecuting attorney to refer to it in his closing argument.[3] Even if the court erred, the errors were harmless. "[A]ppellate courts are required to affirm the trial court, notwithstanding evidential error, whenever there is: (1) substantial and convincing evidence of guilt in a criminal case, and (2) little, if any, likelihood that the error affected the verdict." *State v. Miller,* 300 Or 203, 220, 709 P2d 225 (1985); *State v. Van Hooser,* 266 Or 19, 511 P2d 359 (1973); *State v. Howard,* 77 Or App 29, 711 P2d 194 (1985). Here, the evidence of guilt was substantial and convincing. Moreover, at trial, before the admission of the notice, both defendant and his brother testified that they had concocted a false alibi. The admission of the notice added nothing to the facts already before the jury. Accordingly, there is little or no likelihood that errors, if any, affected the verdict. Furthermore, assuming without deciding that the introduction of the notice and the prosecutor's argument also violated the Fifth Amendment, they do not require reversal, because they were

---

[2] Defendant's argument that admission of the notice also violated the discovery statutes is meritless. He did not argue that the notice was not relevant. *But see State v. Peacock,* 75 Or App 217, 222, 706 P2d 982 (1985).

[3] In closing argument, the state made the following argument:

"What you're also going to have back in the jury room is a notice of alibi that was filed by Mr. Margolin on August 9 of this year, 1984, an intent to rely on the alibi defense and to rely on the testimony of Chuck Harmon. Well, now, it may be true that now and then anybody might lie to the police. But what does it indicate to you about a person's propensity to lie here today or yesterday when they are on trial, when not only do they lie to the police, they organize other people to lie and they gather them together in a conspiracy to present evidence to you that is nothing but a lie? I think that has a strong bearing on your ability to judge the credibility of this person."

harmless beyond a reasonable doubt. *Chapman v. California,* 386 US 18, 24, 87 S Ct 824, 17 L Ed 2d 705 (1967); *see also Milton v. Wainwright,* 407 US 371, 92 S Ct 2174, 33 L Ed 2d 1 (1972).

■■ Defendant also assigns as error that the court, over his objection, admitted evidence of his drug use on the night of the crime. He argues that the evidence was inadmissible under OEC 404(3).[4] We disagree. The evidence was relevant to complete the picture of the night's events, to explain defendant's state of mind and to demonstrate the relationship between the three participants in the crimes. The state was not required to "sanitize" the evidence. *State v. Hockings,* 29 Or App 139, 146, 562 P2d 587, *rev den* (1977), *cert den* 434 US 1049 (1978).[5] Although the jury might mistakenly have considered the evidence as proof of bad character, the court did not abuse its discretion in finding that the probative value outweighed the prejudicial impact. OEC 403; *State v. Madison,* 290 Or 573, 576, 624 P2d 599 (1981).

■ In his third assignment, defendant asserts that the court erred in denying his motion to suppress statements to Detective Downey that he made in the interview room of the courthouse on January 16, 1984.[6] Defendant argues that the statements were involuntary, because the police tricked him and his attorney, who was present, by interviewing him as a "witness" to the crimes without disclosing to his attorney and to him that the police suspected that he was a participant and had discovered fingerprints and other incriminating evidence linking him to the crimes.[7] The state has the burden to prove

---

[4] OEC 404(3) states:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

[5] Defendant relies on *State v. Quick,* 49 Or App 555, 619 P2d 1347 (1980), in which we reversed a conviction for kidnapping, because the state had introduced evidence of possession of drugs and intent to use them on the evening of the crime. In *Quick,* however, the evidence was not probative of any issue for which it was admissible.

[6] Defendant stated that he had never met the victim and had never been to his residence.

[7] Defendant concedes that the interview did not occur in a custodial setting and, therefore, no issue is presented under *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966). *See also State v. Smith,* 70 Or App 675, 691 P2d 484 (1984), *rev allowed* 298 Or 704 (1985).

by the clear weight of the evidence that defendant confessed freely and voluntarily. "Voluntariness is determined by the totality of the circumstances; police trickery or false statements, alone, may not be sufficiently coercive to result in involuntariness." *State v. Burdick,* 57 Or App 601, 606, 646 P2d 91 (1982). Downey interviewed defendant in the presence of his counsel. The atmosphere was noncoercive. The failure of the police to tell him that he was a suspect does not render his statements here involuntary. The state carried its burden to show voluntariness. The court did not err in denying defendant's motion to suppress.[8]

■ Defendant next assigns as error that the court, over his objection, admitted testimony of the victim's cousin that the victim had discussed a "John Harmon" with her several months before the crimes. He contends that her testimony was inadmissible hearsay. We disagree. The testimony was not offered to prove the truth of the statements made by the victim but only to show that he knew defendant at that time.[9] It was not hearsay, and the court did not err. *Marr et al v. Putnam et al,* 213 Or 17, 25, 321 P2d 1061 (1958); *State v. Kincaide,* 43 Or App 73, 77, 602 P2d 307 (1979).

■ In his final assignment, defendant argues that the court erred in failing to strike testimony which it had ruled was inadmissible after the jury had heard it. Defendant, however, failed to ask the court to strike the testimony and did not request a limiting instruction. Because defendant did not preserve the error, we will not consider the assignment.

Affirmed.

---

[8] Defendant did not request that the statements be admitted conditionally and the question of voluntariness submitted to the jury.

[9] "Proof that one talks about a matter demonstrates on its face that he was conscious or aware of it, and veracity does not enter into the situation." McCormick, *Evidence* 741, § 250 (3d ed 1984).