Argued and submitted August 24, reversed and remanded October 27, 1999

# STATE OF OREGON,
## *Respondent,*

*v.*

# REESA JORENE DAVIES,
## *Appellant.*

## (9812007; CA A104180)

989 P2d 1060

Per C. Olson argued the cause for appellant. With him on the brief was Hoevet, Snyder & Boise, P.C.

Katherine H. Waldo, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

HASELTON, J.

## HASELTON, J.

Defendant appeals from her convictions, following a jury trial, on two counts of unauthorized possession of a firearm. ORS 166.250. She assigns error to, *inter alia*, the trial court's exclusion of certain testimony as inadmissible hearsay.[1] We conclude that the excluded testimony was not inadmissible hearsay and that its exclusion was not harmless error. Accordingly, we reverse and remand for a new trial.

On May 20, 1998, Milwaukie Police Officer Wells stopped a pickup truck for a traffic infraction. Defendant was the driver, and her former boyfriend, Bachulis, was the only passenger. After two other officers, Shelofsky and Riley, arrived to provide back-up, Wells asked defendant for her driver's license, registration, and proof of insurance. Defendant could not provide proof of insurance. Meanwhile, Shelofsky spoke with the passenger, Bachulis, and noticed that Bachulis was "severely agitated" and kept looking at a pile of clothing on the seat between him and defendant. Ultimately, the officers asked defendant and Bachulis to get out of the pickup.

As defendant left the pickup, Wells took defendant's purse from the truck seat and placed it on the bed of the pickup as he and defendant walked back to his patrol car. As Bachulis left the truck, Shelofsky noticed that Bachulis pushed the pile of clothing towards the driver's side of the seat. Shelofsky became suspicious and, when questioned, Bachulis admitted that there was a weapon in the truck. Shelofsky then looked under the pile of clothing and found a black bag containing a .40 caliber semi-automatic pistol.

Wells asked defendant who owned the pistol, and she denied any knowledge of the gun. Defendant further stated that she had borrowed the pickup from an acquaintance, who might own the gun. Wells then decided to have the pickup towed, because defendant could not produce proof

---

[1] Defendant also assigns error to the trial court's refusal to consider certain pretrial motions, including a motion to suppress, as being untimely filed. Given our disposition, which necessitates a remand, defendant will have the opportunity to timely renew those motions before any new trial. Accordingly, we need not reach and resolve that matter.

of insurance, and asked defendant and Bachulis to remove their personal belongings. After Bachulis removed several bags, Wells asked defendant if she had any personal belongings in the truck, and defendant responded that she had only her purse. Wells then retrieved the purse and handed it to defendant.[2]

At that point, Shelofsky asked if he could search the purse, and defendant agreed. Shelofsky found a .22 caliber revolver in the purse. Upon the discovery of the revolver, defendant, who had been cooperative and calm, appeared "visibly upset" and started shaking her head. Defendant told the officers that she did not know that the pistol was in her purse.

Shelofsky asked defendant whether the pistol was loaded. Defendant did not respond but, instead, looked at Bachulis. When Shelofsky asked again, more forcefully, defendant continued to look to Bachulis. At that point, Bachulis said: "Yeah, it's loaded." The admissibility of that statement is the focus of this appeal. Wells later corroborated that both guns were loaded at the time of their discovery.

Defendant was charged with two counts of unauthorized possession of a firearm. ORS 166.250. One count pertained to the .40 caliber semi-automatic found under the clothing; the other pertained to the .22 caliber pistol in defendant's purse. At trial, defendant's theory of defense was that she did not know of the guns and that Bachulis had planted the pistol in her purse to shift the blame and implicate her. To corroborate that theory, defense counsel sought to introduce evidence of Bachulis's "Yeah, it's loaded" statement.[3]

The state objected, asserting that that statement was inadmissible hearsay in that the statement's relevance to the defense depended on its truth—*i.e.*, the statement would be probative of Bachulis's knowledge and possession of

---

[2] At trial, Wells gave differing testimony concerning the purse's location. He first testified that he retrieved the purse from the cab of the pickup; he later testified that the purse was on the bed of the pickup where he had left it. The initial testimony figured prominently in defendant's contention at trial that Bachulis had moved her purse and "planted" a .22 caliber revolver in the purse.

[3] Bachulis was not a witness at trial.

the gun only if the gun was, in fact, loaded. Defense counsel responded:

> "I am not offering [the statement] for the truth of the matter whether the gun was loaded or not. I am offering that to show that [Bachulis] has knowledge of the gun. And I believe that's very relevant to our case. It's very relevant to our theory * * * that [defendant] did not know about this gun, she did not possess it, and Mr. Bachulis did, exclusively."

The court excluded Bachulis's statement, concluding, "[I]f it doesn't go to the truth of the statement, then it wouldn't be relevant to the case."

The jury convicted defendant of both counts of unlawful possession of a firearm.

On appeal, defendant repeats her contention that Bachulis's "Yeah, it's loaded" response was not inadmissible hearsay, OEC 801(3),[4] because it was not offered "for the purpose of establishing that the firearm was loaded * * * [but] to support [defendant's] contention that the declarant alone had knowledge about the gun":

> "By asserting that the revolver was loaded, Bachulis revealed his mental state regarding the firearm. One could say that he 'impliedly' asserted that he had knowledge of the gun by expressly describing one of its features."

The state responds: (1) The statement was inadmissible hearsay in that, to the extent it was offered to prove Bachulis's knowledge, it was probative only to the extent that it was true—*i.e.*, Bachulis's alleged "knowledge [of the gun] depends entirely upon the accuracy of his statement that the gun was loaded." (2) Even if not inadmissible hearsay, Bachulis's statement was irrelevant to defendant's possession because Bachulis's knowledge of the gun "does nothing to enhance the probability that defendant was unaware that

---

[1] OEC 801(3) defines "hearsay" as:

"[A] statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

the gun was in her purse." (3) Even if exclusion of the statement was error, it was harmless error. We reject each of those contentions.

■■ In *Marr et al v. Putnam et al*, 213 Or 17, 25, 321 P2d 1061 (1958), the court summarized the pertinent evidentiary principle:

> "The exclusionary force of the hearsay rule is not applicable when the extra-judicial statement of a third person is not offered to prove the truth of the utterance, but only to show that the statement was made. Where the mere fact that the statement was made is independently relevant, regardless of its truth or falsity (as, for example, to show the state of mind of the declarant, where that fact is in issue), such evidence is admissible."[5]

Here, the statement, "Yeah, it's loaded," was not offered to prove that the gun was, in fact, loaded. Rather, it was offered to establish Bachulis's state of mind in two closely related respects: First, Bachulis purported to have knowledge of the status of the gun found in defendant's purse; second, and more particularly, Bachulis believed that the gun was loaded. The essential relevance of Bachulis's response lies, most bluntly and broadly, in the question that it raises: How or why would Bachulis purport to know about the status of the gun found in defendant's purse? One possible answer—though not the only possible answer—is that the gun was, in fact, Bachulis's and that he had put it in defendant's purse.[6] The state-of-mind relevance of Bachulis's response is reinforced by the fact that extrinsic evidence established that the gun *was* loaded. That, in turn, raises the

---

[5] In *Marr*, a libel action, the defendants' newspaper published an article entitled, "Slickers Work Radio Racket," which, the plaintiffs alleged, implied that they had engaged in dishonest business practices. The trial court, over a hearsay objection, permitted one of the plaintiffs to testify that, on the day of the article's publication, third parties greeted him by saying, "Hi, slicker" or "Hi, racketeer." The Supreme Court sustained the admissibility of those statements as nonhearsay: "This testimony was not offered to prove that [the plaintiff] was a slicker or racketeer, or even that the speakers actually believed him to be, but merely to show that they interpreted the article as having so described him. For such purpose it was admissible." 213 Or at 25-26.

[6] For purposes of OEC 801(3), it makes no difference whether Bachulis said that the gun was loaded or unloaded. The fundamental point is that he purported to have knowledge of the status of a gun found in someone else's belongings.

question: How did Bachulis know it was loaded, unless . . .? Again, a reasonable juror could, but need not, conclude that Bachulis knew that the gun was loaded because it was his gun.

*State v. Aldridge*, 33 Or App 37, 575 P2d 675 (1978), is analogous. There, the defendant was charged with robbing a cab driver. When the investigating officer arrived, the driver claimed that the defendant had robbed him at knife point, and the defendant claimed that the driver was lying and that the disputed money was his. When asked by the officer, the defendant could not describe the number and denominations of the disputed bills. Conversely, the driver responded that " 'he had one $20, and a $10, some $5s and some $1s.' " *Aldridge*, 33 Or App at 40. The officer ultimately recovered a $20 bill, a $10 bill, three $5 bills, a $2 bill and six $1 bills. *Id.*

At trial, the prosecutor sought to have the investigating officer recount the driver's description of the money. The defendant raised a hearsay objection, which the court overruled. In affirming the defendant's convictions, we explained:

"The Supreme Court has distinguished certain statements that resemble hearsay but are not in fact hearsay * * *.

"The evidence in this case provides an example of such evidence. There were two distinct issues involving the money recovered by the police — (1) the actual denominations and amount of the money and (2) the driver's knowledge of the denominations and amount. The fact sought to be proven by the officer's testimony was not the denominations of the bills, but the driver's ability to describe the denominations on the evening of the incident.[1]

---

[1] The actual denominations of the bills were proven by the testimony of the officer who recovered them."

*Aldridge*, 33 Or App at 40 and n 1; *see also State v. Harmon*, 77 Or App 705, 710, 714 P2d 271, *rev den* 301 Or 240 (1985) (testimony describing murder victim's recounting of conversations with the defendant was not inadmissible hearsay:

"The testimony was not offered to prove the truth of the statements made by the victim but only to show that he knew the defendant at that time.").

Here, as in *Aldridge*, the fact sought to be proved was not whether the gun was loaded—which was extrinsically established through Wells's testimony—but Bachulis's purported knowledge of the gun, *i.e.*, his state of mind. *See* C. McCormick, 2 *Evidence* § 250, 114 (4th ed 1984) ("Proof that one talks about a matter demonstrates on its face that she was conscious or aware of it, and veracity does not enter into the situation."). Thus, Bachulis's response, "Yeah, it's loaded" was not inadmissible hearsay.

■   The state argues, alternatively, that Bachulis's statement was nevertheless inadmissible as irrelevant:

> "Even under defendant's theory, the most the statement could prove is that the passenger had some knowledge of the gun in defendant's purse. The only issue for trial was whether defendant knew about the presence of the gun in her purse. The passenger's knowledge would not make it any more or less likely that defendant also knew about the gun."

The state is correct that Bachulis's knowledge of the gun would not *necessarily* exclude the possibility that defendant knew that the gun was in her purse. But that misses the point. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401. Here, as noted, the theory of defense was that Bachulis had planted the pistol in defendant's purse. In advancing that defense, defendant contended that Bachulis had the opportunity to plant the gun when he returned to the pickup to remove his belongings. As support for that proposition, defendant pointed to Wells's initial testimony (which he later contradicted) that he ultimately retrieved defendant's purse from the pickup's cab, and not from the bed, where he had left it. Defendant also relied on the uncontroverted evidence that her demeanor changed dramatically and that she looked to Bachulis after the discovery of the gun in her purse. Given those circumstances, Bachulis's statement tended to make defendant's

"planting" defense more probable in that it would have permitted the jury to conclude that not only did Bachulis have the opportunity to move the gun but that he knew about the gun before it was discovered.[7] The evidence was relevant.

■      The state finally contends that, even if the exclusion of the evidence was erroneous, it was harmless as to both of the counts on which defendant was convicted. We disagree. The state's case as to both guns was circumstantial; there was no direct evidence, including physical evidence, linking defendant to either gun except for the fact that the .22 caliber pistol was found in her purse. Defendant's "planting" theory, if believed, explained and rebutted that fact, and Bachulis's knowledge was central to that theory.[8]

With respect to the .40 caliber semi-automatic found under the pile of clothing between Bachulis and defendant, defendant argues:

> "[T]he unrebutted testimony established that it was Bachulis's agitated and nervous behavior, and subsequent admission, that led Officer Shelofsky to discover the .40 caliber firearm, and that defendant denied any knowledge of that firearm. The only evidence tying defendant to the .40 caliber firearm, independent of the later discovery of the .22 revolver, was defendant's presence in the borrowed pick-up truck.

> "The jury likely found defendant guilty of possessing the .40 because of the discovery of the .22 revolver in her purse,

---

[7] The state argues:

"Ownership or control of a gun is not the only, or even the primary, way that a person would know whether a gun was loaded. Bachulis could easily have watched defendant herself load the gun, or Bachulis may have loaded it while defendant watched, or some third party might have loaded it while both defendant and Bachulis watched."

It is true that Bachulis's knowledge of the gun does not *necessarily* establish his ownership or possession. But it is also true that Bachulis's ownership and possession could reasonably be inferred from his knowledge. That is a question for the jury.

[8] The state emphasizes that the .22 caliber pistol was so small as to be "almost impossible" for a man to use. That fact, while probative, is hardly conclusive evidence of guilt. The state also emphasizes that the jury heard defendant's testimony and could assess her credibility. That begs the question of whether jurors may have viewed defendant differently if they had known of Bachulis's response.

> an item over which defendant inherently had greater control than the truck."

We agree. On this record, the jury's determination that defendant possessed the .40 caliber handgun may very well have been tied to its determination that she possessed the .22 caliber pistol found in her purse. Thus, we cannot say that there is "little likelihood" that the erroneous exclusion of Bachulis's response affected the jury's verdict as to both counts. *State v. Hansen*, 304 Or 169, 180, 743 P2d 157 (1987). Accordingly, we reverse the convictions on both counts of unlawful possession of a firearm and remand for a new trial.

Reversed and remanded for new trial.