DEHOOG, P. J.
*489 Defendant appeals a judgment of conviction entered after a jury found him guilty of two counts of unlawful use of a weapon, two counts of menacing, and one count of interfering with a peace officer. Defendant assigns error to the trial court's ruling under OEC 403 admitting evidence that the police stopped defendant because he had been seen masturbating in front of a children's ballet studio. Defendant argues that the highly prejudicial nature of that evidence outweighed any minimal probative value, and that the trial court therefore abused its discretion in admitting the evidence. The state *753 counters that the evidence was highly probative regarding the context of the police response and that the trial court did not abuse its discretion in concluding that the probative value was not substantially outweighed by any prejudicial effect. We conclude that the trial court's decision admitting the evidence over defendant's OEC 403 objection was not an abuse of discretion. We therefore affirm.
At trial, the state presented the following evidence. On the day in question, a ballet teacher, Tosh, was teaching a class for children ages seven to nine when she saw defendant outside, walking up to the large windows looking into the dance studio. Tosh saw defendant completely face the window and reach his hand into his pants. Initially, Tosh thought defendant was merely scratching himself. Tosh then realized that defendant had a "full erection" and "was masturbating," though defendant did not expose himself. Tosh could see his hand "making the motion up and down." When Tosh realized what defendant was doing, she told her students that there was something at the front desk that she needed to show them. Tosh distracted the children to keep them from looking out the window and moved them sideways toward the front desk. As Tosh moved sideways with the children, defendant shuffled sideways as well, "making the motion" along the window. Upon evidently realizing that Tosh was removing the children from the classroom, defendant quickly turned and walked down the street.
Tosh immediately told a coworker, Chheath, and her employer, "Patty," what she had seen. While Patty called the police, Chheath went out the front door and followed *490 defendant. Chheath approached defendant yelling, "Hey," and defendant responded by turning around in an aggressive and confrontational manner. As Chheath continued to approach defendant, defendant walked back toward him and put his hand in his pocket.
Sergeant Davis of the Beaverton Police Department drove to defendant's location after dispatch notified him "of a local business reporting that a man was fondling himself outside of the business." Davis also asked dispatch to broadcast the information, because he wanted "as many units to come to the area to try and find someone who's doing-allegedly doing something like that." When Davis got out of his car, he recognized defendant from previous encounters and called out to him. Defendant did not respond. Davis yelled for defendant to stop, and defendant turned, faced Davis, and yelled, "What?" After Davis noticed that defendant's hand was in his coat pocket, Davis removed his firearm from its holster, held it at a "low ready" (out of the holster but pointed at the ground), and ordered defendant to remove his hand from his pocket. When defendant exposed his hand in response, he was holding a knife. At that point, Davis raised his gun, pointed it directly at defendant, and ordered him to drop the knife. Defendant did not comply.
As Davis repeatedly ordered defendant to drop the knife, Officer Wujcik arrived and gave the same command. Defendant responded that he would not drop the knife because there were "people after" him. A third officer, Freeman, arrived next, and, upon seeing defendant in a fighting stance with a knife in his hand, pointed his gun at him. Finally, a fourth officer, Spurgeon, arrived. In response to Davis's request for a "less lethal," Spurgeon brought out a shotgun loaded with soft rubber bullets. Spurgeon fired two rounds at defendant, hitting him in the thigh. When defendant still would not drop his knife, Spurgeon fired two more rounds, each time hitting defendant in the shoulder. After the fourth round struck defendant, he turned and ran, with all four officers in pursuit.
Defendant ultimately collided with the side of a car emerging from a driveway and abruptly stopped. Wujcik again ordered defendant to drop the knife several times, *491 while Spurgeon raised his shotgun and pointed it at him. Defendant finally disposed of the knife by throwing it into some nearby bushes. However, when defendant did not comply with Wujcik's order to get down on the ground, Wujcik tackled him. The encounter ended when Wujcik and Spurgeon handcuffed and formally arrested defendant.
As a result of that encounter with the police, the state charged defendant with four counts of unlawful use of a weapon, *754 ORS 166.220(1)(a) ; four counts of menacing, ORS 163.190 ; and, for his interactions with Davis, one count of interfering with a peace officer, ORS 162.247. Ultimately, the jury found defendant guilty of two counts of unlawful use of a weapon (one count as to Davis and another as to Wujcik), two counts of menacing involving the same two officers, and interfering with a peace officer. The jury acquitted defendant of the remaining charges.
Before trial, defendant moved to exclude as unduly prejudicial evidence of why the police were dispatched to the ballet studio. Defendant conceded that "the officers should be able to talk about the fact that they stopped him, the fact that they stopped him because he was suspected in another unrelated matter because * * * that gets them to the scene." He argued, however, that
"going into the specifics of uncharged conduct, in particular conduct that is about as prejudicial as you can get, * * * when you do a[n OEC] 403 analysis this should get excluded, given that it's not relevant to the charges that will be in front of the jury. Although it's relevant for the fact that it gets the officers to the scene where the incident that defendant * * * is charged with, * * * going into the specifics of that incident is [not] relevant."
In response, the state argued that
"the jury is entitled to learn why police had law enforcement contact with the defendant and how the witness who identified the defendant had an opportunity to observe the defendant and make that identification * * *."
Defendant argued that the witness's identification was irrelevant because the charged offenses involved only defendant and law enforcement. The trial court disagreed, stating:
*492 "Okay. I'm going to allow that evidence in. I think it's highly relevant and it's-it's-it's obviously prejudicial, but the issue would be whether or not it's unfairly prejudicial. I'm going to find that it's not."
Before opening statements, defense counsel again raised the issue:
"What I would propose doing * * * is a stipulation. The defense would be willing to stipulate to saying that they are not to consider whether the stop and-and really whether the order to drop the knife were lawful. That the defense would concede both of those things and that they should not consider, I guess, what brought the officers to the situation.
"That's what I would propose and I think that, again, to be fair to the State, I think the officers need to explain why these people were here. I think that can be accomplished by eliminating unlawfulness or suspicion that the officers were just stopping him at random. But, again, I would just put on the record that I think in balancing the probativeness versus the prejudicial nature of this one fact, I think it weighs heavily in favor of [defendant] and, again, I think it can be remedied with that stipulation."
The state did not agree to defendant's proposed stipulation. In the state's view, it could leave the jury guessing as to why the officers had responded with the degree of force that they had. The state argued that the jury was entitled to know "what the defendant had engaged in and why [the police] thought it was a serious enough incident for them to react the way they did." The trial court ruled that the state's proposed evidence-including the ballet teacher's observations and the resulting police response-all "would come in." Defendant did not request a limiting instruction, and the trial court did not give one.
On appeal, defendant assigns error to the trial court's ruling, again relying on OEC 403. OEC 403 provides:
"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."
We review a trial court's ruling admitting evidence under OEC 403 for abuse of discretion.
*493 State v. Roberts , 288 Or. App. 145, 152, 406 P.3d 117 (2017). "We generally defer to the trial court's decision regarding 'whether the probative value of the evidence is substantially outweighed by the potential for prejudice.' " State v. Sewell , 257 Or. App. 462, 468-69, 307 P.3d 464, rev. den. , *755 354 Or. 389, 315 P.3d 420 (2013) (quoting State v. Williams , 313 Or. 19, 29-30, 828 P.2d 1006, cert. den. , 506 U.S. 858, 113 S.Ct. 171, 121 L.Ed.2d 118 (1992) ). We extend that deference because the trial court saw and heard the evidence firsthand and was therefore uniquely positioned to assess potential prejudice. State v. Walton , 311 Or. 223, 234, 809 P.2d 81 (1991). As a general rule, " OEC 403 favors admissibility and places the burden on the party seeking exclusion of the evidence[.]" Sewell , 257 Or. App. at 469, 307 P.3d 464. A court abuses its discretion when it reaches "an end not justified by, and clearly against, evidence and reason" or makes a determination "outside the range of legally permissible outcomes." Id. at 469, 472, 307 P.3d 464 (internal quotation marks omitted).
In State v. Mayfield , 302 Or. 631, 733 P.2d 438 (1987), the court outlined a trial court's obligation when analyzing evidence under OEC 403. The prescribed methodology requires the court to take four steps:
"(1) 'analyze the quantum of probative value of the evidence and consider the weight or strength of the evidence'; (2) 'determine how prejudicial the evidence is, [that is,] to what extent the evidence may distract the jury from the central question whether the defendant committed the charged crime'; (3) balance those two factors; and (4) make a ruling to admit some, all, or none of the proponent's evidence."
State v. Anderson , 282 Or. App. 24, 27, 386 P.3d 154 (2016), rev. allowed , 361 Or. 486, 395 P.3d 869 (2017) (quoting Mayfield , 302 Or. at 645, 733 P.2d 438 ). Although a trial court need not expressly follow the Mayfield analysis, the record must reflect that the court considered the matters prescribed in Mayfield . Id.
Defendant does not argue on appeal that the trial court failed to engage in the proper inquiry under OEC 403, nor does he contend that the challenged evidence lacks any probative value and is therefore irrelevant. For its part, the state acknowledges that the evidence is prejudicial. Both parties, therefore, focus their arguments on whether the *494 trial court properly exercised its discretion in balancing the probative value of the evidence against its potential for prejudice. In conducting that inquiry, the question is whether the risk of prejudice caused by the evidence substantially outweighs its probative value-that is, whether the evidence is unfairly prejudicial.
Evidence admitted over a defendant's OEC 403 objection is not unfairly prejudicial simply because it is harmful to the defense. State v. Shaw , 338 Or. 586, 614, 113 P.3d 898 (2005). Rather, unfair prejudice in the context of OEC 403 means " 'an undue tendency to suggest decisions on an improper basis, commonly although not always an emotional one.' " State v. White , 71 Or. App. 299, 303, 692 P.2d 167 (1984), rev. den. , 298 Or. 705, 695 P.2d 1372 (1985) (quoting Legislative Commentary to OEC 403 ). "The critical inquiry in determining whether evidence is unfairly prejudicial is whether the evidence improperly appeals to the preferences of the trier of fact for reasons that are unrelated to the power of the evidence to establish a material fact." Sewell , 257 Or. App. at 469, 307 P.3d 464.
In arguing that the trial court erroneously concluded that the probative value of the challenged evidence was not substantially outweighed by its prejudicial effect, defendant relies heavily on his offer to stipulate to the fact that the officers were lawfully responding to a report that defendant had been involved in a crime. According to defendant, his proposed stipulation would have preserved the probative value of the evidence while cleansing the evidence of its prejudicial effect. We have recently explained, however, that a defendant's offer to stipulate to the facts that the state seeks to establish through disputed evidence does not divest that evidence of probative value. State v. Johnson , 288 Or. App. 528, 539, 406 P.3d 1091 (2017), rev. den. , 362 Or. 389, 411 P.3d 386 (2018) (so stating as to graphic autopsy photographs). Although a proposed stipulation could be a relevant consideration for a trial court under Mayfield 's fourth step-ruling whether to admit some, all, or none of the proposed evidence-a stipulation does not rob the trial court of its discretion to otherwise admit the evidence. Thus, to the extent that defendant argues that, in light of his proposed stipulation, the only *495 proper *756 exercise of discretion in this case would have been to exclude the evidence, we disagree.
As the parties agree, there is probative value-albeit, in defendant's view, limited value-to the evidence that the police arrived at the scene in response to reports that defendant had been seen masturbating in front of a children's ballet studio. That evidence provided relevant context for the confrontation between the officers and defendant that led to the charged offenses. See State v. Schoen , 34 Or. App. 105, 109, 578 P.2d 420, rev. den. , 283 Or. 503 (1978) (stating that evidence can be relevant to complete the story of the crime charged). Generally, the state is not required to "sanitize" its evidence by "deleting background information to the point that the evidence actually presented seems improbable or incredible." Id. ; see also State v. Harmon , 77 Or. App. 705, 709, 714 P.2d 271, rev. den. , 301 Or. 240, 720 P.2d 1279, cert. den. , 479 U.S. 867, 107 S.Ct. 228, 93 L.Ed.2d 155 (1986) (upholding admission of evidence that the defendant used drugs on the night of the crime; explaining that such evidence was relevant to complete the picture of the night's events, explain the defendant's state of mind, and demonstrate the relationship between the participants of the crime).
In arguing that the prejudicial quality of the evidence did not substantially outweigh its probative value-i.e. , that the evidence was not unduly prejudicial-the state contends that the challenged evidence was particularly helpful to the jury because it explained why the officers reacted with the degree of force that they did. Without the evidence, the state posits, the jury might have viewed the officers' conduct as a disproportionate response to an unspecified report of a crime; that, in turn, might have negatively affected the jury's assessment of the officers' credibility. In response, defendant argues that the challenged evidence did not provide useful context in that regard because the fact that defendant was stopped for public masturbation-as opposed to another offense-did nothing to help the jury understand the material issues at trial. We disagree. Davis's testimony suggested that the intensity of the police response was largely due to the specific nature of defendant's alleged conduct. As Davis explained to the jury, *496 he had asked dispatch to broadcast the report to other officers because he wanted to maximize the police response; he evidently wanted "as many units" as possible to be available to apprehend a suspect "allegedly doing something like that." Thus, under the particular circumstances of this case, the challenged evidence was probative because it gave the jurors context for assessing the nature and degree of the police response.[1]
Balancing that probative value of the evidence against its "obviously prejudicial" nature, the trial court concluded that the evidence was not unfairly prejudicial. We conclude that the court did not abuse its discretion in reaching that conclusion. That is, given the value of the challenged evidence in explaining the police response, as well as the disparity between that evidence and the charged offenses, we cannot say that the court struck the wrong balance. In other words, it was certainly not "clearly against [the] evidence and reason" for the trial court to conclude that the evidence would not improperly appeal to the preferences of the jury for reasons unrelated to the power of the evidence to establish the matter it was admitted to prove. See Sewell , 257 Or. App. at 469, 307 P.3d 464. We recognize that, as in Harmon , there was some possibility that the jury could improperly consider the challenged evidence as proof of bad character, especially in the absence of a jury instruction not to use the evidence in that manner. Such a risk does not, however, inevitably require the exclusion of evidence. Harmon , 77 Or. App. at 709, 714 P.2d 271. Given our deferential standard of review, we conclude that the trial court's admission of the evidence over defendant's OEC 403 objection was not an abuse of its discretion. We therefore affirm.
Affirmed.

Defendant does not dispute that the intensity of the police response had some relevance. Accordingly, we assume for purposes of our analysis that evidence that goes to whether the police response was excessive is relevant to the material issues at trial.